## SUPREME COURT.

### LEE AND OTHERS agt. STANLEY.

Where it appeared that the defendant at the time of issuing the attachment against him, kept a house in Bradford, New-Hampshire, in which his wife and children lived, and in which he entertained his friends, and which was frequently called by him "his home,"—*held*, that such place was the legal residence and *domicil* of the defendant, notwithstanding the positive statement of the defendant that he had since the spring of 1852, and then had a store of goods, and was doing business as a merchant, and had actually resided in Franklin Co., in this state, with the honest intention of making the latter place his permanent residence.

*New-York Special Term, Feb.* 1854. Motion to set aside attachment.

The attachment was issued against the defendant upon an allegation that he was a non-resident. The defendant showed by his own affidavit that he formerly resided and did business in Lynn, Massachusetts; that in the winter of 1846–7, he broke

up keeping house, and his wife went to live with her mother in Bradford, New-Hampshire; he remained in Lynn until February, 1849, when he went to California, leaving no property or business in Lynn. In September, 1850, he returned from California, and went to Bradford aforesaid, and remained there and in Massachusetts and Maine, without any permanent business, until the spring of 1852, when he went to Hogansburgh, Franklin Co., N. Y., and bought a store of goods, hired a store, and commenced business as a merchant, with the actual and honest intention of making that place his residence and home ; and had actually resided there until July, 1853, when he sold out his business. But previously, in April, 1853, he had made arrangements to establish himself in business at Moria in said county of Franklin, and agreed for the building of a store, to be leased to him for five or ten years; that he continued his business at Moria until the commencement of this action.

That when he came to Hogansburgh in the spring of 1852, he left no business or property in Massachusetts, New-Hampshire, or elsewhere in New-England, and actually abandoned all thought or intention of returning there to reside or do business. That his wife and only child remained with her mother in Bradford, until October, 1852, when they came to Hogansburgh with the intention of remaining permanently with defendant. Before they came, he had agreed to hire a house in the latter place with the intention of keeping house, but before their arrival, the owner of the house moved in and occupied it himself; and he was then unable to procure any other. His wife remained at Hogansburgh until the last of February, 1853, when he being unable to hire a house, and his wife being about to be confined, he allowed her to return to her mother's, in Bradford aforesaid ; that he intended to have his wife return to Franklin county, and she would have so returned but for the breaking up of his business by this and other attachments. That he had endeavored to hire a house to go to house-keeping at Moria, but none was to be had, and he had engaged board for himself and family at a hotel there.

That for more than eighteen months last past, it had been

Lee and others agt. Stanley.

actually and in good faith his intention to reside and do business permanently at Hogansburgh or Moria, in the county of Franklin, N. Y.; and that during all that time he had been, and then was a resident in the said county of Franklin, and not elsewhere.

The affidavit of Wm. W. Barnard stated, that he went into the employment of defendant, as a clerk on the 15th of February, 1853, and remained with defendant at Hogansburgh about two months, when he went to Moria and took charge of defendant's business at that place, where he remained up to the time of the commencement of this action; that he was acquainted with the business and plans of the defendant: and believed the statement in the affidavit of the defendant to be correct. That from the time he first went into the employment of said defendant, the latter uniformly declared it to be his intention to reside and do business permanently at Hogansburgh, or Moria; and all his arrangements seemed to be in accordance with such intention. He knew that the family of defendant were at Hogansburgh in the winter of 1853, and understood that they left for the cause stated in defendant's affidavit. He learned from both the defendant and Alfred Fulton, that defendant had engaged a dwelling-house of said Fulton, as stated by defendant in his affidavit. He also personally knew of the agreement of said Stanley to hire a store at Moria for a term of years.

On the part of the plaintiffs, it appeared, from the affidavit of J. W. Kimball, that about the 1st of November, 1853, he met defendant in the city of New-York and had a conversation with him relative to his place of residence or home, and defendant informed him that "it was where night overtook him," and then informed him that defendant's wife was at some place in New-England, not recollected, and that defendant was then going to see her and his children before he returned, and that he was then going to Boston. Had heard defendant say that he had a store, and was doing business at Williamstown, Canada.

John S. Eldridge, of Hogansburgh, stated that he had been

acquainted with defendant since the spring of 1852; that he owned the store occupied by defendant at the place aforesaid; that defendant occupied it, he considered, as a tenant at will; that he had repeatedly heard defendant say that "he was going home to see his wife," and after being absent a few days, would say he "had been home;" that the last winter (1853) defendant had a store at Williamstown, Canada West, and according to defendant's statements, was doing a large business there; that defendant spent most of his time between Hogansburgh and Williamstown, until he established a store at Moria, after which he divided his time between the three places,—except when East. Had heard defendant say he had no right to vote in Hogansburgh, or did not consider himself a voter there. Has heard defendant say that his wife was keeping house at some place in New-Hampshire.

Myron Hitchcock, of Cornwall, Canada West, stated that he had had repeated business transactions and frequent conversations with defendant since the spring of 1852; that defendant had told him that his wife was keeping house in New-Hampshire, and that his wife's mother lived with his wife; that the past summer defendant informed him "he had been home and had seen the baby;" he said to defendant that he supposed defendant would bring her back again, that defendant said, "he did not know as he should, that he had a good home or house for her there, and every thing comfortable for her, and she preferred to be there;" that he had no settled place here, and he was a part of the time here and a part of the time in Canada, and that he made it his home "where night overtook him;" that defendant kept a store at Williamstown, Canada West; that he had heard defendant say that Hogansburgh was a mere deposit for his goods, and that he sold most of his goods in Canada; that at one time defendant invited him to go to New-York by way of defendant's house, said he had a good house and every thing comfortable about it, and lived in good fashion; that defendant told him in the winter of 1853, that "his wife had been up here, (Hogansburgh meaning,) on a visit."

Buel J. Hitchcock, of Cornwall, Canada West, stated, that he had repeatedly, during the summer of 1853, heard defendant say that he had "a nice, cozy place down home in New-Hampshire, and that he had a wife and family there, keeping house;" that in the fall of 1853, defendant told him that defendant and John O. Bridges had been down home, and that they had had a nice time, &c. Had frequently heard defendant remark in substance, that he had been down home, or was going down home; and during the summer of 1853, defendant informed him, in answer to an inquiry, that defendant's wife was up here last winter and made a long visit.

John O. Bridges, late of Hogansburgh, then of Massena, St. Lawrence Co., stated that defendant had repeatedly told him that defendant's wife was keeping house in New-Hampshire, and that her mother lived with her; that defendant frequently called the place where his wife kept house "his place," and frequently spoke of "going home," and after having been absent, would say, "he had been home," or "had been down home." That in September, 1853, defendant invited him "to go home with him," and that in accordance with such invitation he went with defendant to Bradford, New-Hampshire, that on their arrival, defendant invited him to go to "his house," and he accordingly went, and found there Mrs. Stanley and children, and that, to all appearance, Mrs. Stanley appeared to be mistress of the house, her mother being an aged and infirm woman, unable to get about the house. During the summer, (1853,) saw defendant putting up a box of articles, which defendant said he was going to send "home." While at Bradford, as aforesaid, defendant showed him what defendant had done toward repairing and moving the buildings, that it cost defendant $150, and said he must, or designed to keep the place.

Alfred Fulton, of Hogansburgh, corroborated the statements before given, respecting the assertions made by defendant respecting his going home, (to Bradford,) or his having been home to see his wife, &c. That in the fall of 1853, defendant spoke to him about hiring a house at Hogansburgh, which was then

vacant, that he informed defendant he could have the house, but defendant did not conclude any bargain; that soon after defendant's wife came to Hogansburgh and boarded for a few months at Mrs. Taylor's Hotel; that some time in the winter, defendant again endeavored to engage said house for the use of W. W. Barnard, who was then in defendant's employ, but did not engage it, as defendant had not accepted his terms in the fall previous, and he had promised said house to another person. Had during the fall of 1852, and winter of 1853, heard defendant on divers occasions say that he had a store in Williamstown, Canada West, and that he was doing more business there than at Hogansburgh; defendant was back and forth at Williamstown and Hogansburgh.

E. W. & G. F. CHESTER, *for Plaintiffs.*
CHARLES TRACY, *for Defendant.*

CLERKE, Justice. Notwithstanding the very positive state-ments contained in the affidavits in support of this motion, I think the plaintiffs have sufficiently proved that, at the time the attachment was issued, the *domicil* of the defendant was at Bradford, New-Hampshire. The papers read on this motion satisfactorily show, that he there kept a house, in which his wife and children lived, and in which he entertained his friends and exercised the domestic rights and duties.

Now as a man can have only one domicil, and as I entirely concur with Justice PAIGE in his able opinion in Crawford agt. Wilson, (4 *Barb.* 504,) that the terms legal *residence or inhabit-ancy* and *domicil* mean the same thing, (with a few exceptions, not comprising this case,) I cannot avoid the conclusion, that the defendant was a non-resident at the commencement of this action. His being engaged in business in Franklin County, in this state, as a store-keeper, had no greater effect in making him a resident here, than a similar occupation in Williamstown, Canada, made him a legal resident of that place. He probably intended to remove his domicil at some future time from Bradford to this state, and he might have made the effort on a former occasion to do so; but he never put that intention into

execution by abandoning his domicil in New-Hampshire, and establishing one in this state.

For these reasons I dismiss the order to show cause why the attachment should not be set aside, with $10 costs.