NEW-YORK PRACTICE REPORTS. 221

The New-York & Erie Bank agt. Robert Codd.

# SUPREME COURT.

THE NEW-YORK & ERIE BANK, appellant, agt. ROBERT CODD, respondent.

*Counter affidavits* may be read on a motion to vacate an attachment, made before the officer who granted it.

And the plaintiff may read *further* or *supplementary affidavits*, in answer to the motion, for the purpose of sustaining the attachment.

But the plaintiff should not be permitted to offer evidence to sustain his attachment, upon other and different grounds from those upon which he first predicated his right to it. (*All the reported cases upon these questions, since the Code, examined.*)

On *appeal* from the order of the justice at chambers, the court is not confined to the question whether the affidavits disclose facts sufficient to give the judge *jurisdiction* to issue the attachment, but may review the decision of the officer upon the *merits*. (BACON, J., *contra, on this last point.*)

*Erie General Term, May,* 1855.

Present, BOWEN, P. J., BACON and GREENE, JJ.

APPEAL from an order made at chambers on the following facts :—

On the 14th day of November, 1854, a motion was made before Justice GREENE, at chambers, for an attachment against the defendant, on the ground that he had departed from the state, with intent to defraud his creditors,.or to avoid the service of a summons, or that he kept himself concealed within the state with the like intent.

In support of the motion, the plaintiff read two affidavits, upon which a warrant of attachment was issued, on that day. On the 21st day of November, a motion was made before the justice who issued the attachment to vacate the same. The motion was founded upon the affidavits upon which the attachment was issued, and upon new affidavits on the part of the defendant; and was opposed by new affidavits on the part of the plaintiff, tending to contradict the affidavits read in support of the motion, and to strengthen the case made for the attachment in the original affidavits. The new affidavits on both

sides were read, subject to the objections of the respective par-
ties; and the question as to the right of either party to read
new affidavits was reserved, and argued with the other ques-
tions raised on the motion.

The justice decided that all the affidavits were admissible,
and, upon a consideration of the case, as made by all the affi-
davits, granted the motion to discharge the attachment.

The plaintiff appealed to this court.

CHAUNCEY TUCKER, *for appellant*.

JOSEPH G. MASTEN *and* JAS. G. HOYT, *for respondent*.

By the court—GREENE, Justice.    Three questions arise on
this motion :—

1st. Did the affidavits upon which the warrant was first is-
sued, contain facts sufficient to give the officer jurisdiction, and
to authorize the issuing of the warrant?

2d. If those affidavits were sufficient for those purposes, has
the defendant a right to disprove the facts alleged in them by
counter affidavits? and,

3d. If the defendant may read counter affidavits on this mo-
tion, can the plaintiff read new affidavits, either for the purpose
of fortifying the grounds on which the right to the attachment
is predicated in the original affidavits by additional evidence,
or of rebutting the facts set forth in the counter affidavits?

The first is a mixed question of law and fact, depending upon
the tendency and force of the evidence disclosed by the original
affidavits, which will be considered hereafter.    Upon the last
two questions there is some real, and more apparent conflict of
authority.

The earliest case which has fallen under my observation, in
which the question as to the practice of reading counter affida-
vits on a motion to vacate an attachment was raised, is that of
*Killian* agt. *Washington*, decided Dec., 1849, (2 *Code Reporter*,
78.)    The defendant in that case read affidavits, apparently
without objection, to disprove the fact on which the attach-

The New-York & Erie Bank agt. Robert Codd.

ment was issued, and the court ordered a reference, to deter-
mine the facts in controversy.

In the case of *Morgan* agt. *Avery,* decided in January, 1850,
(7 *B. S. C. R.* 656,) an attachment had been issued upon an
affidavit, alleging that the defendant had departed from the
state with intent to defraud his creditors; and I infer from the
opinion of Justice EDMONDS, at page 662, that there was also
an allegation of an intent to avoid the service of a summons.

Two questions were raised on the motion at special term to
dissolve the attachment: *first,* whether the defendant could
be relieved on motion; and, *second,* whether the plaintiff could
read supplementary affidavits for the purpose of strengthening
the case made by his original affidavits.

Justice EDMONDS, at the special term, held that the attach-
ment could not be treated as an order, and that, therefore, the
remedy by appeal, given by § 349 of the Code, was not appli-
cable, and that the defendant's only remedy was by motion.

Upon the other question, the learned justice *held,* that the
supplementary affidavits might be read by the plaintiff, "not
merely in answer to those on the part of the defendant, but in
support of the original application for the attachment;" and
added, "if such application was originally defective, that may
influence the question of costs, but need not affect the great
question, whether, by reason of defendant's absconding, the
plaintiffs are entitled to the provisional remedy of an attach-
ment."

In the case of *Conkling* agt. *Dutcher,* decided in July, 1850,
by the general term in the 6th district, (5 *How. Pr. R.* 386,)
an attachment had been issued by a county judge, which de-
fendant moved, on affidavits at the special term, to vacate on
the merits. The motion was denied by the special term, and
the defendant appealed. The court, SHANKLAND, J., deliver-
ing the opinion, *held,* that the affidavits upon which the county
judge acted were sufficient to confer jurisdiction upon him to
act in the premises. That this order could be reviewed on the
merits only on appeal to the general term, under § 349, and
that the special term could entertain a motion to set it aside

only for irregularity. It was, therefore, held, that the order of the special term, denying the motion to vacate the attachment, *was not appealable.* The learned justice proceeds to say, " The defendant, against whom an attachment has issued, has two modes of getting rid of it, where it has been improvidently granted, first by applying to the judge to vacate his own order, (§ 324,) and, second, by appeal to the general term, under § 349, *sub.* 1. But in neither mode can opposing affidavits be read by the defendant, nor can additional affidavits be used by the plaintiff."

The case of *St. Arnaut* agt. *De Brixeedon,* decided in January, 1851, by the superior court of the city of New-York, (3 *Sand. S. C. R.* 703,) was an appeal from an order at chambers, denying a motion to discharge an attachment. The question was there raised as to the right of the plaintiff to introduce supplemental affidavits on such a motion, in support of the original affidavits on which the warrant was issued.

The court cited the case of *Morgan* agt. *Avery* with approbation, and decided that the affidavits were properly received.

The case of *Genin* agt. *Tompkins,* decided in Dec., 1851, by the general term, in the first district, (12 *Barb. S. C. R.* 265,) was an appeal to disprove the facts upon which the attachment was issued. There was no question made in the case as to the sufficiency of the affidavit upon which the warrant was allowed; and Justice HARRIS *held,* that counter affidavits could not be read on the motion. The cases of *Morgan* agt. *Avery,* and *Conklin* agt. *Dutcher,* were cited, and the former case was regarded as overruled by the latter.

In the case of the *Bank of Lansingburgh* agt. *M'Kie,* decided in December, 1852, (7 *How. Pr. R.* 360,) a motion was made, at special term, to vacate an attachment granted by a county judge. There appears to have been no question in that case as to the sufficiency of the affidavit upon which the warrant was issued, and the only question was whether, when an attachment had been issued on sufficient affidavits, a motion could be made, *at special term,* on new affidavits, to vacate the warrant, and Justice HARRIS again *held,* upon a review of the

The New-York & Erie Bank agt. Robert Codd.

cases of *Morgan* agt. *Avery*, and *Conklin* agt. *Dutcher* that counter affidavits could not be read on that motion.

In the case of *Granger* agt. *Schwartz*, decided in the superior court of the city of New-York in October, 1853, an attachment had been issued against two defendants, as non-residents, upon an affidavit showing such non-residence, and that neither of the defendants had been served with the summons.

The plaintiff sought to sustain the attachment by affidavits, showing that the resident defendant had concealed himself, &c. The court *held*, first, that as the affidavit upon which the attachment was issued showed both defendants to be non-residents, and that neither of them had been served with the summons, the court had no jurisdiction of the action, and consequently that the judge had no jurisdiction to grant the warrant; and, second, that where an attachment has been issued upon papers which show upon their face that it is void, a motion to vacate it cannot be defeated by showing that other grounds for it exist, different from those shown in the original papers.

The last case is an express authority in favor of a motion at special term to set aside an attachment, or any other order that has been irregularly or illegally issued; or, in other words, an order issued upon affidavits which do not allege sufficient facts to give the officer granting it *jurisdiction to act in the matter*.

The same thing was decided in *Blake* agt. *Locy*, (6 *How.* 108,) and *Lindsay* agt. *Sherman*, (1 *C. R. N. S.* 25,) and is assumed by the learned justices who delivered the opinion in *Conklin* agt. *Dutcher* and the *Bank of Lansingburgh* agt. *McKie*. But it was *held* in the last two cases, and in *White* agt. *Featherstonhaugh*, that it was for *irregularity only*, that the order could be vacated on such a motion. And here, I apprehend, is the only point upon which the *authority* of the three cases last mentioned is in conflict with that of *Morgan* agt. *Avery*, and *Genin* agt. *Tompkins*, in which cases, as we have seen, motions to vacate the attachment on the merits were entertained at special term.

Justice SHANKLAND, in *Conklin* agt. *Dutcher*, and Justice HARRIS, in the *Bank of Lansingburgh* agt. *McKie*, agree in the

proposition, that an attachment may be vacated on the ground that it has been improvidently issued, in two ways : *first*, by an application to the judge who issued it to vacate his own order ; and, *second*, by an appeal from the order to the general term.    The Code plainly provides for both of these remedies. (§§ 324 and 349.)    But the question as to what papers might be used upon a direct application to vacate an attachment on the merits, to the judge who issued it, was not involved in either of those cases ; nor in the case of *White* agt. *Featherstonhaugh;* and for this reason neither of those cases can be regarded as an authority on this point.

Justice HARRIS, in the *Bank of Lansingburgh* agt. *M‘Kie*, in speaking of the practice in such cases, says, " The order having been made out of court, and without notice, the adverse party is at liberty to apply to the judge, who made the order, to vacate or modify it.    This application may be founded upon the papers upon which the judge acted when he made the order, *or upon new papers*.    The decision upon this application is final, except in such cases as are within the provisions of § 349.    In those cases, of course, a review may be had by an appeal to the general term."    The learned justice proceeds to say, that, " instead of applying to the judge who made the order, the party may move, at special term, to vacate the order ; but that, on such motion, new papers cannot be read, for the reason that the inquiry on that motion is limited to the question, whether, upon the facts before the judge, he was authorized to make the order."

It is not necessary, on this motion, to settle this last question of practice, upon which the authorities above cited are in conflict.    The question now is, can counter affidavits be read on a motion to vacate an attachment made before the officer who granted it ?

I am of opinion, that the proposition that they can is sustainable, both upon principle and authority.    We have seen that the general term of this court, in the first district, has twice decided that such affidavits may be read on motions to vacate attachments ; that the practice of receiving such affidavits has

received the deliberate sanction of all the justices of the superior court of the city of New-York, in two cases decided in that court, that the point now in controversy was not involved in either of the three cases where such affidavits were rejected, in all of which the question arose on motions made, in the first instance, or appeals from orders entered, at special term; and that this practice is conceded to be proper, on such a motion as this, by Justice HARRIS in the case of the *Bank of Lansingburgh* agt. *M'Kie.*

I think it must be so held upon principle. The attachment authorized by the Code is wholly unlike any remedy of that nature heretofore known to the law. It is an order in the action in the nature of process, and, like all orders of that kind, must, from the nature and necessity of the case, be subject to the inherent power which every court of general jurisdiction exercises by virtue of immemorial usage and prescriptive right over its process and orders, until that power is abrogated by express legislation. Sections 240 and 241 of the Code, provide for an application to the officer who has issued an attachment to discharge the same. Section 241 provides that it shall be discharged on the execution of an undertaking to pay the judgment that may be recovered.

This remedy is appropriate in a case where an attachment has been properly issued. But it affords no relief adapted to a case where an attachment has been improperly issued, and could never have been intended as a remedy in such cases. By the provisions of the first article of title 1 of chapter 5 of the 2d part of the Revised Statutes, entitled, "Of Attachments against Absconding, Concealed, and Non-resident Debtors," a party against whom an attachment has been issued, as an absconding, concealed, or non-resident debtor, may, at any time before the appointment of trustees, present a petition, verified by his oath, to the officer who issued the warrant, controverting the facts upon which it was issued, and praying that the allegations of the petition may be determined by the supreme court, &c., (2 *R. S.*, *p.* 10, §§ 43, 44,) and thereupon, and on receiving from such debtor the security required by sec-

tion 45, the officer is required to report his proceedings, with the affidavits, &c., to the court, (§ 46,) which court is required to proceed and hear the proofs and allegations of the parties in a summary way, and determine whether the allegations in the debtor's petition have been satisfactorily proved; (§ 47;) and in case such allegations shall be so proved, the court is required to discharge the attachment, and release the property of the debtor; (§ 48,) chapter 4 of title 7 of the 2d part of the Code, contains no such provision. But the absence of such a provision is by no means conclusive as to the power of the court to afford relief in cases arising under the latter statute.

The attachment provided for by the Revised Statutes was a mere statutory proceeding, instituted and conducted out of court, and before an officer who derived all his powers from the express provisions of the statutes. The attachment provided for by the Code is an order of the court, and can be issued only "in an action" pending in the court. The officer issuing it is the officer of the court, in his action in the premises he exercises the power of the court; and until it is judicially settled that the Code has developed a new and exclusive system of justice, and pragmatically declared a rule of right as anomalous as the course of procedure which bears that name, I cannot assent to the proposition that the court has no power to prevent an oppressive use of its orders, whether granted through the error or inadvertence of its officers, or procured by the false suggestions of a party.

I insist, therefore, that neither the absence of a provision authorizing the court to open its eyes, and exercise its senses upon a question so seriously affecting the rights of a suitor, as that involved in this motion at chambers, namely, whether the *ex parte* allegations on which the attachment was issued were true in fact, nor the existence of a provision like that for discharging the attachment on giving security for the payment of the judgment, a provision wholly inapplicable and inadequate to the exigencies of this case, justifies the presumption that the legislature did not intend that conflicting affidavits should be

received on a motion of this kind. But let the result of con-jecture be what it may, the conclusion on this question must be the same. The necessity of entertaining this question on such evidence, exists in the nature of the proceeding; the power is inherent in the constitution of a judicial tribunal, it existed before the Code, and has not been abrogated by it. The court has no right to abdicate its powers because the legislature ig-nores them : they can be abolished only by clear affirmative pro-visions manifesting that intent. It is settled by the cases above cited, that when an attachment has been issued upon an affi-davit which is not sufficient to give the officer jurisdiction, it may be vacated by the officer who granted it on an application to him ; or it may be reversed for error on appeal to the general term, or set aside for irregularity on a motion at the special term.

It appears, from a review of the same cases, that the propo-sition that the motion, when made before the officer, may be founded upon affidavits controverting the grounds upon which the attachment was issued, is not opposed to the authority of any adjudged case ; and I think it clear upon principle, that they may and should be received. I will add, though it is not ne-cessary to the decision of this case, that I can perceive no ob-jection to the practice of moving upon new affidavits at the special term. The judge who issues the attachment acts as an officer of the court, and his action is subject to the control of the court. But as the same remedy may be obtained in another form, this is not, perhaps, a point of any practical importance.

The next question made on the argument was, as to the right of the plaintiff to read further, or supplementary affidavits in answer to the motion, for the purpose of sustaining the attach-ment. Aside from the authority of *Morgan* agt. *Avery*, and the other cases above cited, it seems to me clear, upon principle, that this may be done.

The defendant makes a motion, upon affidavits, for a dis-charge of the attachment. And, in analogy to the practice on other motions, I think the plantiff should have the privilege of answering the moving affidavits by any facts tending to contra-

dict the averments in such affidavits, and to sustain and fortify the grounds upon which the attachment was issued.

To this extent I can see no impropriety in receiving such affidavits. But the plaintiff should not be permitted to offer evidence to sustain his attachment upon other and different grounds from those upon which he first predicated his right to it.

It is suggested that the practice adopted in this case may operate as a surprise upon the defendant; and that, if it is sustained, the party moving for an attachment will disclose, in his first affidavit, barely facts enough to give the officer jurisdiction; and if he can obtain the attachment upon those facts, he will be permitted to sustain it afterwards by affidavits, which the defendant will have no opportunity to answer or explain. The remedy of the defendant, in such a case, is plain and effectual. He may, on an allegation of surprise, apply to the court or judge, who hears the motion, for an order that the motion stand over for a convenient time, to enable him to answer the plaintiff's new affidavits, and for permission to do so. This order will always be granted when it shall appear to be necessary to prevent surprise or injustice.

I am therefore of opinion, that the original affidavits upon which the attachment was issued, the counter affidavits on the part of the defendant, and supplementary affidavits on the part of the plaintiff, were all properly received on this motion; and that the appeal must be disposed of upon the case made by all of these papers.

My brother, Bacon, is inclined to the opinion, that the decision of the justice at chambers, on the question of fact made by the affidavits, is conclusive; and that the only question that can arise here is, whether the affidavits disclose facts sufficient to give the judge jurisdiction to issue the attachment.

With great deference to the learned justice, I regard the office of an appeal of this nature in a very different light. It is brought, as I understand it, to review the decision of the officer on the merits.

The application for the attachment is addressed to the judg-

ment of the officer to whom the application is made. If he has no evidence before him sufficient to give him jurisdiction to entertain the question as to the existence of the fact upon which the party's right to the order depends, his order is void, and may be set aside for irregularity, and the party who acts under it will not be protected by it. When he merely misjudges as to the force of the evidence presented to him, his order, though valid, is nevertheless *erroneous:* and to correct that error by a review of the question upon the merits, is the precise office of an appeal. And, in my opinion, it is no answer to an allegation of error to say a judge has committed it. The mischief resulting from an error is in no degree mitigated by the fact that the error is judicial.

The question presented on this motion is a different one, in all its aspects, from one presented by an issue joined, by the pleadings in an action, and tried by a court or jury, according to the course of the common law, and different rules are applicable to it when brought up for review on appeal. In all such cases, where an appeal is given, I think all questions, both of law and fact, which affect the merits, are brought up for review.

The affidavits in this case are very voluminous; and I do not regard it as necessary to examine them in detail. Upon a careful review of all the facts disclosed, I am satisfied that the affidavits upon which the attachment was issued were entirely insufficient to warrant it. That if there was enough to give the justice jurisdiction, of which I have some doubt, it was nevertheless an improvident exercise of his powers to issue the warrant upon evidence so slight.

An examination of the subsequent affidavits has, in my opinion, strengthened the case made by the defendant on the motion. In this, as in many other cases of this kind, there may be some foundation for suspicion or doubt, as to whether all the proceedings of the defendant have been above reproach; but judicial action cannot be based upon suspicion.

The plaintiff, when he moved for this attachment, was bound to prove affirmatively some of the facts which gave him a title

to this process.    In this I think he failed; and in this opinion my brother Bowen concurs.

The order must be affirmed.

Bacon, Justice.    I can add nothing to the full and elaborate opinion of Mr. Justice Greene on the propriety of the practice, adopted in this case, of hearing, on the application to dissolve the attachment granted by him, the counter affidavits on the part of the defendant, and the supplemental affidavits on the part of the plaintiff.    I concur in his conclusion, that all the affidavits were properly before him, and were all to be considered on the motion made at chambers, and are consequently rightfully before us on this appeal.

Having conceded this, however, which really is the only strictly legal proposition involved in the case, I am by no means certain that this does not dispose of the whole case; for it will then resolve itself into substantially a question of fact, depending upon the degree of weight to be attached to the whole evidence, as presented in all the affidavits, to wit, whether the defendant did depart from the state with intent to defraud his creditors. Upon this, as a question of fact, the justice, before whom the application to discharge the attachment was made, has held the proof not sufficient to establish the intent; and I am at a loss to discover by what authority we are entitled to review and revise his judgment in this matter.    As an original question, the evidence might have affected our minds differently, and we might possibly have come to a different conclusion; but exercising, as we do in this case, a merely appellate jurisdiction, I know not why we should not be bound by the well-established rule, that, on a question of fact, passed upon by the tribunal whose decision is appealed from, the finding will not be disturbed by the appellate court.    I do not see why this is not a proper case in which to apply that rule.    I am disposed to consider it decisive in this case.

I have not, however, rested entirely in this conclusion, but have considered fully and carefully all the facts legitimately before us in the several affidavits of the respective parties; and

from that examination I am led to concur in the propriety of the order discharging the attachment.

I cannot go over the case at any length, but can only indicate in a very general way my views. It is quite evident that the case is not brought within that part of § 229 of the Code, which authorizes an attachment against a person who "keeps himself concealed" to defraud creditors, or avoid service of process. No such concealment was attempted by the defendant in this case. He can only be brought within the action of the attachment, by having "departed from the state with intent to defraud his creditors," and that under circumstances which authorizes the party applying for to affirm, and the court which allows the attachment to presume, that he has "absconded," in the language of the 227th section.

The facts, disclosed in the original affidavits, were certainly not very strong, although it may be said they raised a presumption, on which the officer was authorized to act. But the counter affidavits on the part of the defendant, it seems to me, fully met, and satisfactorily disposed of, every circumstance from which the departure with the intent charged, was sought to be inferred.

What, then, did the supplemental affidavits on the part of the plaintiff prove, and how far are they to be admitted to sustain the attachment? I do not believe that a party is at liberty, in the first instance, to present affidavits which make out only the most bald and naked case, just sufficient to authorize the officer to entertain the application and grant the order, and then, when a full and perfect answer to all the facts and circumstances presented in the affidavits is made by the party proceeded against, to be allowed, by supplementary affidavits, not only to "bolster up" his case, but greatly to extend it, by attempting to show the fraudulent conduct of the defendant attending the creation of the debt, the mode in which he has dealt with others similarly circumstanced, and the strange and mysterious manner in which his assets seem to have vanished into thin air. The extent to which the cases have gone has been to authorize the introduction of supplementary affidavits, "*in support* of the

original application for the attachment." (*Morgan* agt. *Avery*, 7 *Barb.* 556, *and Pr.* OAKLEY, J., 3 *Sand.* 703.)

With this limitation of the right to introduce additional affidavits in view, a considerable portion of the affidavits which were presented on behalf of the plaintiff in this case, should be rejected in the consideration of the only legitimate inquiry, did the defendant depart from the state, or, in other words, *abscond*, with intent to defraud his creditors ? I can see much in the conduct of the defendant, as disclosed in these affidavits, that needs explanation ; and which, unexplained, is entirely inconsistent with integrity or fair dealing; but I do not see the evidence, which the law requires, that he left the state under circumstances which subjected him to the action of an attachment as an absconding debtor.

Taking all the facts together, it is quite clear that he made no secret of his intention to leave home at the time, and for the object avowed by him ; that he designed and attempted to return on the day he had designated as the time he should be home ; and, in fact, returned, and was found at home, as usual, at the earliest practicable moment, and within twenty-four hours of the time he had originally appointed. It is true, he does not explain the business upon which he went; nor was this called for by the papers on which the application for the attachment was made.

The only allegation of fact in the original affidavits, aside from the circumstance that he was not to be found, upon the very limited inquiries made for him, and that stated on information and belief only, to wit, that the defendant had recently sent large sums of money to Canada, is met and explicitly denied in the opposing affidavit of the defendant.

The only question, then, is, did he convey his person from the jurisdiction of our courts with intent to defraud his creditors? If he did, his property is legally subject to attachment. If not, although the disposition of his property may be fraudulent, yet if he presents his person to be dealt with by his creditors as they may be advised, his property cannot be taken by this summary process, which is a stringent remedy, only to be used in

the specific cases pointed out by the law, and when the facts clearly warrant it.

I confess myself to have come to this conclusion with some reluctance, because of the very suspicious circumstances which have marked the conduct of the defendant. In the armory of the law, however, there are other weapons, which the plaintiff and the other creditors of the defendant are at liberty to use, and which can be effectually wielded, both for the full discovery and the exemplary punishment of fraud. If the defendant shall ultimately be found "in this condemnation," the plaintiff will not be remediless, although deprived of the specific redress which was sought in this case.

In my opinion, therefore, the order appealed from must be affirmed, but, in consideration of all the circumstances, without costs.