## SUPREME COURT.

### JOEL HOUGHTON, and four other cases agt. GEORGE N. AULT.

On a motion to discharge an order of *attachment* issued under the Code, the defendant may read *counter affidavits* in support of his motion.

Under the Code, an attachment is not process for the commencement of an action; it is an order in the action, for the arrest of the debtor's property, in the nature of bail for the payment of such judgment as the plaintiff may obtain; it may issue in a proper case, at the time of commencing the action, or at any time afterwards. In these respects, it is entirely unlike the attachment provided by the Revised Statutes, that being the commencement of a proceeding instituted and conducted out of court, before an officer who derives his power in the matter from the statutes.

The Code, where in its provisional remedies, it uses the term *residence*, or *resident*, means *legal residence*. And legal residence means the place of a man's *fixed habitation*, where his *political rights* are to be exercised, and where he is liable to *taxation*. The idea that the word "resident," when used in the statute, means domicil, or home, or habitation in one place, and the reverse in another, is absurd. That a man may have a residence in one state to vote, and in another to exempt him from attachment, seems preposterous.

*At Chambers Ogdensburgh, January*, 1858.
MOTION to discharge order of attachment.

JAMES, Justice. It is conceded that the facts set forth in plaintiff's affidavit are sufficient to warrant the issuing of the order of attachment; it showed the indebtedness of the defendant upon contract, the amount due, and stated that he was not a resident of the state, but resided in Kingston, Canada West.

The defendant now moves, before the officer who granted the order, to vacate the same, and offers to read counter affidavits in support of his motion. The plaintiff objects to such affidavits being received.

Previous to the last amendment of the Code, there was considerable conflict of opinion and authority on this point. It was held, in *Conklin* agt. *Dutcher*, (5 *How. Pr. Rep.* 386,) that such affidavits could not be received; and that case was followed by *White* agt. *Featherstonhaugh*, (7 *How. Pr. Rep.* 357;) *Bank of Lansingburgh* agt. *McKie*, (7 *id.* 560;) *Niles* agt. *Vanderzee*, (14 *id.* 547;) while the converse was held in *Killian* agt. *Washington*, (2 *Code Rep.* 78;) *Morgan* agt. *Avery*, (7 *Bar.* 656;) *New-York and Erie Bank* agt. *Codd*, (11 *How. Pr. Rep.* 221;) *Farmer* agt. *Walter*, (13 *id.* 348;) and other cases.

The last legislature, in its amendment of section 241 of the Code, enacted that the defendant might, in all cases, move to discharge an attachment, as in other cases of provisional remedies. The provisional remedies given by the Code, title 7, are, arrest and bail; claim and delivery of personal property, injunction and attachment. In cases of arrest and bail, and injunction, the defendant may move to vacate the order on the original papers, or upon counter affidavits of the moving party, (*Code*, §§ 204, 205, 225;) and the amendment to section 241, was no doubt intended, and did confer upon defendants, in attachment cases, the right to use affidavits to show the improvidence of the order on a motion for its discharge.

I shall therefore hold, that the affidavits offered in behalf of the defendant are properly receivable on this motion.

The next question is, was the defendant a resident or not, within the state of New-York, at the time of issuing the attachment?

Under the Code, an attachment is not a process for the commencement of an action; it is an order in the action, for the arrest of the debtor's property, in the nature of bail for the payment of such judgment as the plaintiff may obtain; it may issue, in a proper case, at the time of commencing the action, or at any time afterwards. In these respects, it is entirely unlike the attachment provided by the Revised Statutes, that being the commencement of a proceeding, instituted and conducted out of court, before an officer who derived his power in the matter from the statutes.

The main facts in the case are these: The defendant, a foreigner, having a family, residing in Portsmouth, in Canada, and there owning a ship yard, comes to Ogdensburgh and leases a marine railway, on the 10th of July, 1856; in that lease he covenants not to carry on ship building at any other place than the yard leased, after the expiration of six months; he enters, immediately, into the possession of the yard, and continues to carry on business there, until the issuing of this attachment on the first day of December, 1857. During this period of seventeen months, the defendant was most of the time at Ogdensburgh, his family remained at Portsmouth, keeping house. The defendant, notwithstanding his covenant in his lease, continued work in his ship yard at Portsmouth, until some time in the month of September, 1857. In the meantime, he became largely indebted at Ogdensburgh. About the time of taking his lease, he mortgaged to his lessors the timber, spike, oakum, iron, blacksmith's and shipwright's tools, shop furniture, &c., as security for the payment of certain notes to the amount of $4,340.88. In April, 1857, he assigned his interest in his lease, and all his property as security for indorsements made and to be made. His whole indebtedness at Ogdensburgh appears to be about $22,000, and his assets about $5,000. He frequently represented himself as a non-resident, and stated that his property was liable to attachment; that by the terms of his lease, he was only to pay so much on the tonnage of each vessel drawn out and repaired, as rent.

Upon these facts, the defendant insists that he is a resident of the state of New-York, within the meaning of the attachment law, and that his property is not subject to arrest by order of the court.

To sustain this position, his counsel cited *Haggart* agt. *Morgan*, (4 *Sand.* 198 ;) *same case*, (1 *Sel.* 422 ;) *In the matter of Thompson*, (1 *Wen.* 45 ;) *Towner* agt. *Church*, (2 *Abbott*, 299 ;) *Bartlett* agt. *The City of New-York*, (5 *Sand.* 44.)

The case of *Haggart* agt. *Morgan* was an action on a bond given to release certain property seized by virtue of an attachment issued under the Revised Statutes. On the trial, the sureties offered to show that the defendant in the attachment was a resident at the time of issuing the same, by proving that his house was in the city of New-York; that he was housekeeping there at that time, and had been for many years, that his absence at New Orleans was temporary, being necessarily detained there by a lawsuit; that he had been so detained during his whole absence of three years. The court refused the offer; 1st. Because the offer showed the defendant to be a non-resident within the spirit of the act; and 2d. That giving the bond to discharge the attachment prevented him from showing such fact. At general term, the court held, 1st. That the defendant was estopped from contesting that fact of non-residence in a suit on the bond. This disposed of the case—but the judge who delivered the opinion, went on further to say: "It was well observed by the judge on the trial, that the facts offered to be proved, showed defendant a *non-resident debtor* within the meaning of the statute. He had left the state without paying this demand, and had remained abroad for three years. During all this time the plaintiffs had been *deprived of their just dues;* and it would be strange indeed, if they could not, after such a prolonged absence, make their debtor's property to respond for this debt, because he had all this time the purpose of returning to the state when it might suit his convenience. It will be observed, that this part of the opinion was wholly *obiter*—and further, that it was not claimed

or offered to be proven, that defendant had a family, but only that he kept house, within the state.

When this case came before the court of appeals, the judgment below was affirmed, and the ruling of the judge at circuit approved—both as to the estoppel and non-residence. On the latter point, the court said : " The ruling of the judge was probably correct for the reasons assigned by him. *In the matter of Thompson*, (1 *Wend.* 45,) the distinction was taken between the *residence* of the debtor and his *domicil*. It was there held that his residence might be abroad, within the spirit of the statute, which was intended to give a remedy to creditors whose debtors *could not be served with process*, while the domicil continued in this state. In *Frost* agt. *Brisbin*, (19 *Wend.* 14,) it was said in a case like the present, that actual residence without regard to the domicil of the defendant, was within the contemplation of the statute. The defendant was, therefore, a non-resident, *within these decisions*, although domiciled in New-York."

It will be seen that the court of appeals asserts no opinion of its own ; it merely declares the defendant a non-resident within the decision of the cases cited. The substance of the facts in one case is set out ; the other case, *Frost* agt. *Brisbin*, was this : " The defendant, a citizen and resident of this state, took a large stock of goods to Wisconsin, leaving his wife and child at board in this state, stating that he intended to make Milwaukee his future residence. He remained at Milwaukee ten months in business, then returned to this state on a visit, and after staying two months, was arrested and held to bail. After his arrest, he returned to Milwaukee and continued his business. Before his visit, he was appointed a commissioner, by the legislature of Wisconsin, to distribute the stock of a bank, and a director of the same. On a motion to discharge the order of arrest, the court, after reviewing and citing the various cases, and particularly that of *Thompson*, *in* 1 *Wend.* 45, say, " The cases cited, establish that the transient visits of a person, for a time, at a place, do not make him a resident while there. *There must be a settled fixed abode, an intention to*

*remain permanently*, at least for a time *for business*, or other pur-
poses, to constitute a residence, within the legal meaning of
that term. One of the cases expressly, and all of them virtu-
ally decide, that actual residence, without regard to the domi-
cil of the defendant, was within the contemplation of the stat-
ute. The domicil of a defendant may be in one state or terri-
tory, and his residence in another."

It. will, therefore, be observed that the first case, which is
made to uphold *Haggart* agt. *Morgan*, was held to be within
the spirit of the statute, (both being commenced under the
Revised Statutes), because such statute was intended to give a
remedy to creditors whose debtors being absent, could not be
served with process, though their domicil continued in this
state ; and in the second case, the defendant had no domicil—
his wife and child were mere boarders in this state, his place
of business being clearly established in Milwaukee, and he
claiming not that he had not a residence in Wisconsin, but
that his two months' stay here on a visit to his wife exempted
him from arrest, under the non-imprisonment act of 1831.

The reasoning to sustain the foregoing decisions has no ap-
plication to this case. This action being commenced under
the Code—the attachment is not an original process ; the Code
has provided another means for commencing actions against
absent and non-resident debtors ; and although the defendant
in the first case, may have been a non-resident within the mean-
ing of the Revised Statutes, for the reason assigned—he was
in fact a resident outside that statute. It is also to be observed
that that decision was in furtherance of, and not to defeat, the
ends of justice. So of *Frost* agt. *Brisbin*, it was in furtherance
of justice, and was based upon facts entirely dissimilar to the
case under consideration ; it was but giving construction to a
statute ; in truth, it only decided what was the intention of
the statute in exempting persons from arrest.

The case in the court of appeals being based entirely upon
these two cases, so far as anything is said about residence, with-
out expressing any opinion of its own, and the decision of such

point not being essential to the case, I cannot regard it a binding authority.

The case of *Bartlett* agt. *New-York City*, (5 *Sand.* 44,) was an application for an injunction to stay the collection of a tax assessed against the plaintiff as a resident of the city of New-York. The facts showed, that prior to May, 1849, defendant resided and kept house in New-York; he then broke up housekeeping and removed his family to Westchester county; he remained there until December, when he took rooms with his family in New-York, where he remained until April, 1850; he then returned to Westchester county, and remained until December, 1850, when he again took rooms in New-York; during all this time his only place of business was in New-York. The general act for the assessment of taxes, requires every person to be assessed in the town or ward where he resides when the assessment is made; and by the laws of 1850, when a person shall reside during any year in two or more counties or towns, his residence for the purposes, and within the meaning of the section above, shall be deemed and held to be in the county and town in which his principal business shall have been transacted. It will thus be seen that the plaintiff's liability was clear. The court, however, saw fit to examine all the cases above cited, and adopted the definition there given to the term "residence;" a conclusion not quite necessary to the decision of the case.

The next case is that of *Towner* agt. *Church*, (2 *Abbott Pr. Rep.* 299.) This case was decided at a general term of the first judicial district, in 1855. When the attachment was issued, whether under the Revised Statutes or the Code, does not appear. The facts were these: The defendant had resided with his family in New-York city, and done business there for a number of years, when he and his family removed to Connecticut, and called that their residence; but he kept rooms in the city where he boarded and lodged all the week, attending to business, (except that Sundays he spent in Connecticut.) One judge held that the defendant was not a non-resident of the state, in the sense of our attachment laws; and another

judge held that whenever a person carried on a regular and systemized business in New-York, in which he has invested his working capital, and in such business spends his time during the regular business hours of the day, having not only his stock in trade invested there, but keeping his bank account there, and if all his ordinary transactions take place there, such person fails to come within the fair intent and meaning of our attachment laws, although his family may be actually residing in New-Jersey. That process in such case, either against the person or property, is as easily served, as against one whose family resides in the state.

This is a strong case, and more nearly in point than any other cited; and if the facts in the case under consideration came within the rule above stated, I should feel bound by that decision, although I am unable to reconcile my judgment with its broad conclusions. That a man may have a residence in one state to vote, and in another to exempt him from attachment, seems preposterous. The idea that the word "resident," when used in the statute, means domicil, or home, or habitation, in one place, and the reverse in another, is absurd. Besides, if in *Towner* agt. *Church*, it was an attachment under the Code, the distinction between such an attachment and one under the Revised Statutes does not seem to have been noticed. There is much more propriety in requiring a debtor, whose domicil is without the state, to give security for the debt, than one whose domicil is within. Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by our laws.

But the facts of the latter case were entirely different from the facts in this. In that, the defendant had a fixed business and permanent residence here before he removed to Connecticut. The business remained, and was not broken up, and he himself continued with his business six days in the week; while in this case, the defendant never had a residence here— his house, domicil, family and original business, were in a foreign country, and continued there. His business here was not

of that permanent nature required in *Towner* agt. *Church;* it was a lease, it is true, for ten years, but there was no covenant to carry on the business that length of time; and he only had to pay, as rent, tonnage on vessels actually drawn out for repairs.

Under our former statutes, respecting attachments, where there was no other way of reaching the property of a debtor, whose domicil was in this state, but who remained abroad, a construction, that he was a non-resident, might be justified by the necessity of the case, and in furtherance of justice; but as the necessity no longer exists, that rule should be no longer followed.

But there are other decisions and definitions, on this point, than those above cited. *Burrell*, in his Law Dictionary, defines resident, as one who has a seat or settlement in a place; one who dwells, abides or lives in a place. *Bouvier*, as a person coming into a place, with intention to establish his domicil or permanent residence, and who in consequence actually remains there. *Webster*, a dwelling or having an abode in a particular place, for some time. *In the matter of Fitzgerald,* (2 *Caines,* 317,) it was held, that a person who came into the state, on a commercial adventure, without any intent of settling here, was not a resident within the meaning of the act for relief against absconding debtors. *In the matter of Wrigley,* (4 *Wend.* 602, *and* 8 *Wend.* 134,) Chief Justice SAVAGE, in speaking of the case of *Fitzgerald*, said, it was held, that a resident within the state, was one who had a residence of a permanent and fixed character. Chief Justice SHAW, in 1 *Metcalf,* 245, says, " the question of residence, inhabitance or domicil, although not in all respects precisely the same, they are nearly so, and depend much on the same evidence." In *Crawford* agt. *Wilson,* (4 *Bar.* 505,) the general term of this district, held that " the terms legal residence, inhabitance and domicil, mean the same thing; that by legal residence, they meant the place of a man's fixed habitation, where his political rights are to be exercised, and where he is liable to taxation."

The case of *Lee* agt. *Stanley,* (9 *How. Pr. Rep.* 272,) was a

much stronger case for the defendant. as shown by his own affidavit, than the present, and yet, the motion to discharge the attachment was denied.  In that case, the defendant had actually resided, and carried on mercantile business in Franklin county, in this state, for about two years, with the honest intention of making such place his permanent residence ; but he had a family, and had kept house and entertained his friends in New-Hampshire, during his whole stay in this state.  The court held, that his legal residence was in the state of New-Hampshire.

In my judgment, the Code, where in its provisional remedies, it uses the term *residence* or *resident*, means *legal residence*. Within the principle of the case of *Crawford* agt. *Wilson*, as applied to the facts in this case, the defendant was not a legal resident of the state, at the time the attachment issued.

At that time, he had a fixed habitation and abode in Canada, where his family resided and kept house, and where he and they had resided and kept house, long before he came to Ogdensburgh, and where he had and did entertain his friends. He had never changed that habitation.  If he ever had the intention of changing his abode, and removing his family to Ogdensburgh, of which there is great doubt, judging from the whole case, it had been abandoned some months before the attachment issued.  He continued to own a marine railway, in Canada, and to carry on business there as late as last September ; his letting of said railway, at that time, looked as though not made in good faith.  He had other property, to a considerable amount in Canada, if credit can be given to his statements, and thus his property, his home and his family, were in Canada.  Against this, is the fact, that he had done business at Ogdensburgh, for the past seventeen months, giving it his individual presence and attention ; but the railway, where his business was conducted, was occupied under a lease for ten years ; he was not, by said lease, compelled to carry on the business, nor to pay rent unless he did, as he only paid on the tonnage of vessels actually drawn out.

He had mortgaged all his property here, at about the time

of his lease, and last April assigned his interest in the lease itself, together with all his property here, as collateral security for an amount which here he had no means of paying. His business might, therefore, be abandoned at any moment. He had received large sums of money for work, and left unpaid his tradesman bills, mechanics' and laborers' wages, and suffered his notes to go to protest, thus showing that his money was secreted or had been expended on his property in Canada. In his conversations, he spoke of himself as a non-resident, and his property as liable to attachment.

Under such a state of facts, I have no hesitation in saying, that the defendant's legal residence was in Canada. Neither have I any doubt, that within the fair intent and meaning of the attachment law, under the Code, the defendant was a non-resident of the state, whether such residence be termed legal or actual.

The motion for a discharge of the attachment must be denied, with $7 costs.

NOTE.—An appeal was taken to the general term of the 4th district. And at its session, on the first Tuesday of May, 1858, the order was affirmed.