# ROBINSON *v.* MORRISON.

PRACTICE; ATTACHMENTS; RESIDENCE AND DOMICILE.

1. Where in an attachment proceeding in this District, the defendant files an affidavit traversing the plaintiff's affidavit, upon which the attachment was issued, the questions of whether or not the plaintiff's affidavit is true, and whether there was just ground for issuing the attachment, should, on demand of one of the parties, be determined, not upon affidavits, but upon the statements of witnesses examined orally before the court; *construing* Sec. 783, R. S. D. C.

2. The object of attachment laws allowing the property of a non-resident defendant to be attached, is not so much to coerce him into making his appearance in the suit in which the attachment issued, as to give the plaintiff security for his demand.

3. A person who lives with his family in a State adjoining this District, and is a voter in such State, but who has his place of business here, where he is engaged daily during business hours and during that time is subject to the service of process each day, is a non-resident within the meaning of the attachment laws. There is no such thing as a " commercial " or " trade " residence, which will exempt one from liability to attachment as a non-resident, in the ordinary sense.

4. A declaration by a defendant in attachment that in removing from this to another jurisdiction, he did not " intend to cease to be a citizen and resident of the District," is not effective to show him to be a non-resident, for, upon the question of residence, as distinct from domicile, intention cannot control the fact.

5. Whether attached property in the custody of the marshal can, pending a motion to quash the attachment, be seized under any process issuing from the court in which the attachment was issued, or any other court, *quære*.

6. The right of a plaintiff in attachment to condemnation of the property seized under his writ cannot be affected by any proceedings, to which he is not a party, and which have for their object the taking of the property from the custody of the marshal. It is the marshal's concern to see that the plaintiff's security is not lost.

No. 119.   Submitted October 18, 1893.—Decided January 2, 1894.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, holding a law term, quashing a writ of attachment based upon the alleged non-residence of the defendant.   *Reversed.*

THE FACTS are sufficiently stated in the opinion.

*Mr. Conway Robinson, Jr.*, the appellant, appeared in person, and with him was *Mr. Leigh Robinson:*

1. The court below erred in quashing the attachment in this case upon the mere *ex parte* affidavit of the appellee, contradicted as it was by the affidavits filed by the appellant. *Campbell* v. *Morris*, 3 H. & McH., 553; *Ranahan* v. *O'Neale*, 6 G. & J., 301; *Barr* v. *Perry*, 3 Gill, 315; *Lambden* v. *Bowie*, 2 Md., 337, 338, 340; *Gover* v. *Barnes*, 15 Md., 578, 579; *Howard* v. *Oppenheimer*, 25 Md., 365, 366; *Hardesty* v. *Campbell*, 29 Md., 536, 537; *Stewart* v. *Katz*, 30 Md., 347.

The province of the defendant's affidavit, in the language of Sec. 783, R. S. D. C., is to traverse the plaintiff's affidavit. By the terms of the statute such a traverse or denial only raises an issue, and the statute says: "The court shall determine whether the facts set forth in the plaintiff's affidavit are true"; and then it says, "If the facts do not sustain the affidavit, the court shall quash the writ of attachment." The court is therefore not confined to the mere affidavits. It is to look beyond them to the real facts, which it must obtain by independent proofs, and then determine whether the real facts sustain the contention of the one party or of the other.

The last clause of Sec. 783, R. S. D. C., is conclusive upon the subject, for it says, " This issue [that is, the issue raised by the opposing affidavits] may be tried by a judge at chambers," &c. This shows that the court or a judge at chambers is to regularly try the question and, it is submitted, should do so, not on *ex parte* affidavits, but upon proofs such as were held necessary in *Lambden* v. *Bowie, supra.*

2. Even if the question had been as to where was the appellee's *domicile*, as contradistinguished from his *residence*, still the court below should have held upon the affidavits *pro* and *contra* the motion to quash that the appellee's *domicile* was not in the District of Columbia, but was in Prince George's county, Maryland, when the attachment issued in this cause. Story on Conflict of Laws (8th ed.), § 46, pp. 50 to 52 ; *Loder* v. *Littlefield*, 39 Mich., 514; *Attorney General* v. *Kent*, 1 Hurl. & Colt., 26 ; *Ringgold* v. *Barley*, 5 Md., 193.

But the *domicile* of the appellee Morrison really is immaterial. The statute does not give a creditor a right to an attachment upon the ground that his debtor is *not domiciled* in the District, but upon the ground that his debtor " is a *non-resident* of the District." The distinction between *domicile* and *residence* has long been recognized and is well settled, and should not be lost sight of, because in determining where a person has his domicile his intentions are often an important matter to be considered; but in determining where he has his residence such is not the case.

3. It is a debtor's actual residence and not his constructive residence or domicile or citizenship which fixes such debtor's *status* under non-resident attachment laws, and where such debtor is actually residing in a place for the time being, without any present intention of removing therefrom, his intentions as to the future do not affect the question. If it is his actual residence for the time being, even though his stay there is to be for an indefinite or uncertain time, his *status* becomes fixed, and the legal consequences attached to it are not affected by any secret mental resolves or intentions

or animus of such debtor upon the subject, nor by any general intention to remove to some previous or different residence at some indefinite time in the future, not fixed.  *Weitkamp* v. *Loehr*, 53 N. Y. Superior Ct., 81 ; *Wood* v. *Hamilton*, 14 Daly, 42 ; *In re Thompson*, 1 Wend., 45 ; *Haggart* v. *Morgan*, 5 N. Y., 428 ; *Frost* v. *Brisbin*, 19 Wend., 11 ; *Dorsey* v. *Kyle*, 30 Md., 518 ; *Risewick* v. *Davis*, 19 Md., 96 ; *Weber* v. *Weitling*, 18 N. J. Eq., 443 ; *Stout* v. *Leonard*, 37 N. J. L., 494 ; *Baldwin* v. *Flagg*, 42 N. J. L., 497 ; *Bartlett* v. *N. Y.*, 5 Sandf., 47 ; *Douglas* v. *N. Y.*, 2 Duer, 110 ; *Lawson* v. *Adlard (Minn.)*, 48 N. W. Rep., 1021 ; *Burrill* v. *Jewett*, 2 Robt., 701 ; *Hanson* v. *Graham, (Cal.)* 23 Pac. Rep., 57.

4. A debtor's declarations and statements as to his residence or as to his intentions about changing or retaining the same when contradicted by his acts should not be allowed to avail him to evade the law.  Such declarations and statements are inadmissible and incompetent as evidence in such debtor's favor under an issue as to such debtor's non-residence, although his declarations and statements upon the subject, if against his interest, are admissible and competent evidence against him. *Risewick* v. *Davis*, 19 Md., 96 ; *Greene* v. *Beckwith*, 38 Mo., 385 ; *Yerkes* v. *Brown*, 10 La. Ann., 94 ; *Wesson* v. *Marshall*, 13 Id., 436.

5. Even where a non-resident debtor is shown to have been within the jurisdiction on the day that an attachment issues against him or at different times during that day, this will not raise any presumption that such debtor was within the jurisdiction at the exact time when such attachment was issued, nor will the actual presence of a non-resident debtor within the jurisdiction at the time when the attachment issues against him defeat his creditor's right to such attachment or exempt such debtor's property therefrom.  *King* v. *Cooper*, 2 Miles, 176 ; *Perrine* v. *Evans*, 35 N. J. L., 222, 223 ; *Burcalow* v. *Trump*, 1 Houst. (Del.), 363 ; *Jackson* v. *Perry*, 13 B. Mon. (Ky.), 232, 233 ; *Bryans* v. *Dunseth*, 1 Martin (La.) N. S., 416 ; *Breed* v. *Mitchell*, 48 Ga., 536.

6. The ability of a creditor to obtain service of ordinary process upon his debtor who lives beyond the jurisdiction, but who comes into the jurisdiction at times (or who comes even frequently or constantly into the jurisdiction and could readily and conveniently be served with ordinary process), does not keep such a debtor from being a non-resident, or defeat his creditors' right to issue a non-resident attachment against him, or exempt his property from liability on such attachment; nor does the fact that such a debtor (who is living outside of the jurisdiction) may have his place of business within the jurisdiction or, having such place of business within the jurisdiction, may be in frequent or constant personal attendance there, keep him from being a non-resident, or defeat his creditors' right to issue a non-resident attachment against him, or exempt his property from liability on such attachment. In such a case the fact of his having an actual place of abode or home outside the jurisdiction, to which place he returns each night or week at such short intervals as his business permits of, will make him a non-resident and liable to attachment as such. *Chaine* v. *Wilson*, 8 Abb. Pr. (N. Y.), 78, 103 to 105 ; S. C., 1 Bosworth (N. Y.), 682 to 685 ; *Barry* v. *Bockover*, 6 Abb. Pr. (N. Y.), 374 ; *Lawson* v. *Adlard*, (Minn.), 48 N. W. Rep., 1020 ; *Atkins* v. *The Disintegrating Co.*, 18 Wall., 272 to 307 ; *Cooke* v. *Bank*, 50 Barb. (N. Y.), 341 ; *Fisk* v. *R. R.*, 53 Barb. (N. Y.), 474 ; *Baldwin* v. *Flagg*, 43 N. J. L., 497 ; *Rayne* v. *Taylor*, 10 La. Ann., 726 ; *Lee* v. *Stanley*, 9 How. Pr., 272 ; *Murphy* v. *Baldwin*, 41 How. Pr., 270 ; *Potter* v. *Kitchen*, 6 Abb. Pr., 374 ; *Coffin* v. *Stitt*, 5 N. Y. Civ. Proc. R., 262 ; *Giddings* v. *Squier*, 4 Mackey, 49 ; *Bache* v. *Lawrence*, 17 How. Pr., 554 ; *Cowardin* v. *Ins. Co.*, 32 Gratt., 447.

7. Considerable weight should be given to the fact that the appellee Morrison and his wife executed and acknowledged two deeds dated May 27, 1891, and August 12, 1892, respectively, in which as grantors in said deeds they recite themselves to be "of Prince George's county, Maryland," and very great weight should be given to the additional

fact that both the appellee Morrison and his son voted in Prince George's county, Maryland, at the election held there in November, 1891, and that prior to doing so he and his son both took an oath before the registration officer of said county that they had each been a *resident* and *citizen* of Maryland for a year before registration, and of Prince George's county for six months before registration. *Wolf* v. *McGavock*, 23 Wis., 518; *Shelton* v. *Tiffin*, 6 How. (U. S.), 185; *Baldwin* v. *Flagg*, 43 N. J. L., 500; *Fisk* v. *R. R.*, 53 Barb. (N. Y.), 474.

8. Under the earlier attachment laws of Maryland and of other States it might have been argued that the only object of an attachment was to compel the appearance of the non-resident debtor, since an appearance of such debtor worked *ipso facto* a dissolution of the attachment. But this ceased when, by subsequent legislation, the attachment laws were so far changed that an appearance of a non-resident debtor no longer dissolved an attachment against him; but the attachment, notwithstanding the debtor's appearance, continued in full force, unless such debtor gave in lieu thereof some good and sufficient bond or undertaking or the like to secure his creditor's claim or anticipated judgment. Under such subsequent statutes the objects of a non-resident attachment were two-fold. One object was to compel the appearance of the non-resident debtor, and another, and even more important object, was to give the creditor security for his claim or for his anticipated judgment. Under these later laws the ability of a creditor to serve, or the fact that he had served, the non-resident debtor with ordinary process would not by itself give the creditor the security contemplated by the act, and could not defeat his right to obtain that security by means of non-resident attachment. *Bank of U. S.* v. *Merchants' Bank*, 7 Gill, 439; *Barr* v. *Perry*, 3 Gill, 315; *Wallace* v. *Bogel*, 66 Tex., 573; *Harris* v. *Doughty*, 74 Tex., 5; *Kennedy* v. *Morrison*, 31 Tex., 220; *Cooper* v. *Reynolds*, 10 Wall., 318; *Inbush* v. *Farwell*, 1 Black, 572; *Pike* v. *Wassell*, 94 U. S., 713; *Larimer* v. *Kelly*, 10

Kan., 312; *Taylor* v. *Carryl*, 20 How., 597; *Atkins* v. *Disintegrating Co.*, 18 Wall., 272.

*Mr. J. J. Darlington* for the appellee:

1. The question of whether or not the court below erred in trying this cause upon *ex parte* affidavits, is not before this court. The appellant met the application and affidavits of the appellee by counter affidavits upon his part; the court heard and disposed of the motion upon these affidavits, as has been the invariable practice of the court, unbroken by a single exception, since the passage of the attachment act, June 1, 1866, and the record discloses no exception by the appellant to that method of disposition.

2. The object of Sec. 782, R. S. D. C., in allowing attachments to issue against non-residents, is to enable suitors to proceed against defendants who are not amenable to service of the ordinary process of the court. Indeed, it is only upon this ground that the attachment laws of the several States could be held to be constitutional. Statutes discriminating between residents and non-residents simply upon the ground of non-residence, as, for example, statutes requiring licenses of non-residents, have uniformly been declared invalid. Every statute is to be construed with reference to its intent and the evil which it was designed to remedy.

" It is safe to premise that the legislature intended to furnish a remedy against a debtor's property in cases where, through his continued absence, the ordinary process fails for want of service. It would seem to follow that the necessary element is the inability on the part of the plaintiff to procure personal service of the ordinary process." Kneeland on Attachment, Sec. 168; *Barr* v. *Perry*, 3 Gill, 326; *Long* v. *Ryan*, 30 Gratt, 718; *U. S.* v. *Nardello*, 4 Mackey, 512; *Risewick* v. *Davis*, 19 Md., 923; *Towner* v. *Church*, 2 Abb. Pr., 299.

3. Upon the facts, enlarged upon in the court below, that the defendant Morrison is described in certain conveyances of Maryland property as a resident of Maryland, and that he voted in that State, it is not deemed necessary to dwell.

Those allegations appear only in the affidavits in rebuttal, and the appellee enjoyed no opportunity for either contesting or explaining them. Inasmuch, moreover, as a man may have more than one residence at the same time, for different purposes, it is submitted that they are wholly immaterial.

The phraseology of deeds is usually that of the attorney who drafts them, and it is not singular that the grantors in a Maryland deed, who had any kind of residence there, should be described as residents of Maryland. As before pointed out, it is not pretended that, in the deed of the Washington property, executed in June, 1891, a month after the Maryland mortgage, the appellee and his wife were not described as residents of the city of Washington in the District of Columbia.

Even upon the question of domicile, in which, unlike questions of residence, there can be but one, the rule is that, while the description which a man gives to himself in a legal document is not to be entirely discarded as an indication of intention, the weight which is to be given to this species of evidence must very much depend upon the particular circumstances of each case. Phil. on Dom., 87-8; *Smith* v. *Armistead*, 7 Fla., 161.

As to the fact that the appellee voted in Maryland, it may well be that, having no vote in the District of Columbia, he considered himself sufficiently a resident of Maryland to be entitled to vote there.

" A party may not be a citizen for political purposes, and yet be a citizen for commercial or business purposes." *Field* v. *Adreon*, 7 Md., 214.

In *U. S.* v. *Nardello, supra,* a capital case, in which the defendant was convicted of murder and sentenced to death, exception was taken at the trial to the competency of a juror, on the ground that he was a non-resident of the District of Columbia. The juror stated, on his *voir dire*, that he was unmarried, his parents lived in Virginia, that he had for fifteen years been the agent of the Virginia Midland Rail-

road Company in the city of Washington, where he spent eleven months and a half of each year, the remaining two weeks being spent at his parents' home in Virginia, and that he exercised the right of suffrage in that State. The court held that, notwithstanding such political residence in Virginia, the juror was a resident of the District of Columbia within the sense of the jury act.

In *Shelton* v. *Tiffin*, 6 How., p. 185, cited by the appellant, the question was, not as to residence, but as to citizenship, conferring jurisdiction on the Federal courts; and, moreover, the expression of the court relied upon is *obiter*. In the other cases referred to in appellant's brief, in which any importance was attached to voting, the facts bore no such analogy to those of the case at bar as to be at all pertinent, as will abundantly appear from the slightest inspection of them.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a judgment quashing a writ of attachment.

August 16, 1892, Conway Robinson sued William H. Morrison in the Supreme Court of the District, upon a note for $880.97. At the time of filing suit, he procured a writ of attachment to issue, which was levied on certain personal property of defendant. The ground of attachment set forth in the affidavit* is that defendant Morrison "resides near

---

*Affidavit in support of attachment.* DISTRICT OF COLUMBIA, *ss:* I, Leigh Robinson, having been first duly sworn according to law, do depose and upon oath say that I know Conway Robinson, Junior, who is the plaintiff in the above-entitled cause, and that he is my brother, and that I also know William H. Morrison, who is the defendant in said cause; and, deposing further, this affiant also upon his oath says that on the 2nd day of January, A. D. 1891, said William H. Morrison, by the name of W. H. Morrison, made his certain promissory note, dated Washington, D. C., January 2, 1891, and thereby promised to pay to the order of this affiant's said brother, by the name of Conway Robinson, Jr., one year after date, eight hundred and eighty and $\frac{97}{100}$ dollars, at the National Bank of the Republic, value received, with interest at six per centum per annum, and that said Morrison received full value from this affiant's said brother for said promissory note, and before its maturity delivered the same to this affiant's said brother, for full value, in the usual and

Hyattsville, Prince George's county, in the State of Maryland, and is a non-resident of the District of Columbia."

Defendant filed a motion to quash the attachment, supported by affidavit,* as required by. Sec. 783, R. S. D. C., which reads as follows: " If the defendant, his agent or attorney, shall file an affidavit traversing the plaintiff's affidavit, the court shall determine whether the facts set forth in the plaintiff's affidavit are true, and whether there was just ground for issuing the writ of attachment; and if the facts do not sustain the affidavit, the court shall quash the writ of

---

regular course of business, and that said promissory note is now overdue and unpaid, and that at its maturity said William H. Morrison did not pay the same or any part thereof, and that the same, both principal and interest, now still remains wholly due and unpaid and unsatisfied, and that said note and the non-payment thereof aforesaid constitutes and is the said plaintiff's cause of action in the above-entitled cause, and that the plaintiff's declaration in said cause declares upon the same ; and, deposing further, this affiant also upon his oath says that said plaintiff in the above-entitled cause (who is this affiant's said brother) has a just right to recover against said William H. Morrison, the defendant in said cause, what said plaintiff claims in his declaration in said cause, namely, the sum of eight hundred and eighty and $\frac{97}{100}$ dollars ($880.97), with interest thereon from January 2, A. D. 1891, at the rate of six per centum per annum besides the costs of said suit, exclusive of all set-offs and just grounds of defense.

And, deposing further, this affiant also upon his oath says that said William H. Morrison, the defendant in the above-entitled cause, resides near Hyattsville, in Prince George's county, in the State of Maryland, and that said defendant in said cause, William H. Morrison, is a non-resident of the District of Columbia.

This affiant further says that the grounds upon which said· plaintiff in the above-entitled cause (who is this affiant's said brother) bases said plaintiff's action in said cause and the grounds upon which this affiant's said brother bases the affidavit hereto annexed are the same matters and things which this affiant has set out and stated above in this affidavit, and that the same are truly and correctly stated above in this affidavit, and that the matters and things stated in this affidavit this affiant knows to be true.                                                    LEIGH ROBINSON.

Subscribed and sworn to before me this 16th day of August, A. D. 1892.
                         J. R. YOUNG, *Clerk,*
                         By R. WILLETT, *Assistant Clerk.*

*Affidavit supporting motion to quash attachment.* DISTRICT OF CO- · LUMBIA, *ss:* I, William H. Morrison, on oath say that I am the defendant in the above-entitled cause ; that I removed with my parents to the city of Washington, District of Columbia, about 50 years ago, when I was about 7 years of age, and that I have ever since continued to be a resident of the said city ; that I have been for more than thirty years last past engaged in business as a bookseller in said city, in

attachment or garnishment; and this issue may be tried by a judge at chambers on three days' notice."

The motion was heard upon affidavits* filed on both sides, and the learned justice below, being of the opinion "that the defendant is not a non-resident in the sense of the law relating to attachments," ordered the writ quashed.

The appellant contends that it was error to hear the motion to quash upon affidavits only. Necessarily, in a summary proceedings of this kind, much must be left to the discretion of the trial justice with regard to the manner of the

---

the conduct of which I have been in daily personal attendance, the said book business having been conducted for many years at No. 475 Pennsylvania avenue northwest, and thereafter at No. 1334 F street northwest, in said city ; that I have never engaged in business elsewhere than in the said city, where, continuously and exclusively, my bank accounts have been kept and all my business transacted ; that the only color for the claim made in this case that I am a non-resident of the District of Columbia consists in the fact that a little more than two years ago, having two small children in ill health and owning a small tract of land just over the District line, I removed my family to the said tract of eight acres, where they have since remained, but without any intention upon my part to cease to be a citizen and resident of the District of Columbia ; that I have been in daily attendance during the whole of the business days at my said book store throughout said period, subject only to occasional absences on account of business or sickness in the family, and engaged in the open and visible conduct of my said business, where I have been at all times accessible to all persons having business with or desiring to see me ; that all my capital has been and at the date of the attachment was invested in my business in Washington, except so much of it as was invested in the said tract of land in Maryland, and that prior to said attachment the said tract of land had ceased to be mine, having been by me sold and the title thereto conveyed to the purchaser, who had made full payment therefor, so that at the date of said attachment all my property, except my household and kitchen furniture, was within the District of Columbia ; that my said household effects do not exceed in value the sum of $500, while the capital invested in my business in Washington I estimate to be not less than $20,000 ; and I deny that I am or at any time since my early childhood have been a non-resident of the District of Columbia.                                      W. H. MORRISON.

Subscribed and sworn to before me this 18th day of August, A. D. 1892.
J. R. YOUNG, *Clerk,*
By R. WILLETT, *Assistant Clerk.*

*Counter-affidavits for attaching creditors.* DISTRICT OF COLUMBIA, *ss :* I, Conway Robinson, Jr., having been first duly sworn according to law, do depose and upon oath say that I am the plaintiff in the above-entitled cause, in which William H. Morrison is the defendant ; that by a deed dated August 2, A. D. 1888, and recorded on August 18, A. D. 1888, in Liber No. 1340, folio 115 *et seq.,* of the land records of the District of

proceeding. However, we think the statute contemplates the better and safer rule, upon the demand of one of the parties, requiring the witnesses to be examined orally before the court. *Campbell* v. *Morris*, 3 H. & M'H., 553; *Lambden* v. *Bowie*, 2 Md., 334; *Hardesty* v. *Campbell*, 29 Md., 533.

The question is of no practical importance in this case because there is no real conflict in the facts contained in the several affidavits. The issue is not of fact but of law. The defendant Morrison had resided with his family in the

Columbia, the said William H. Morrison and Martha K. Morrison, his wife, sold and conveyed in fee simple to Frederick A. Tschiffely, Jr., for $28,000, the lot of ground and store thereon, being part of lot three, in square four hundred and ninety-one, in the city of Washington, in the District of Columbia : Beginning for the same at the southwest corner of said lot and running thence easterly on Pennsylvania avenue twenty-two feet eleven inches, thence at right angles with that width the whole depth of said lot; that said William H. Morrison had, prior to selling and conveying his said Pennsylvania avenue lot, only occupied and used the same as a book store and place of business and not as a home or place of abode or as a residence ; that before consummating and closing said sale of said Pennsylvania-avenue property, and pending the negotiations therefor, said William H. Morrison told this affiant, first, that he thought of taking, and afterwards that he had agreed to take a house and lot near Hyattsville and Riverdale, Prince George's county, Maryland, as a part of the consideration for his said Pennsylvania avenue property, and after closing the transaction told this affiant that he had done so ; that by a deed, dated August 23, A. D. 1890, and recorded on August 25, A. D. 1890, in Liber No. 1512, folio 461 *et seq.*, of the land records of said District, the said William H. Morrison and Martha K. Morrison, his wife, sold and conveyed in fee simple to Samuel Bieber and Samuel Bensinger, as tenants in common, for $31,500 the lot of ground and building thereon, fronting on 4½ street, being part of original lot 23, in square No. 491, in the city of Washington, District of Columbia, beginning on 4½ street at the northeast corner of said lot, thence on said street 56 feet to the southeast corner of said lot, thence west on the south line of said lot 75 feet 10 inches, thence north 12 feet, thence west 49 feet 2 inches to an alley in the rear, thence north on said alley 44 feet to the northwest corner of said lot, thence east 125 feet to the place of beginning, subject to a deed of trust recorded in Liber No. 1071, folio 479 *et seq.*, of said records, the debt thereby secured being assumed by said purchasers as a part of the consideration; that said William H. Morrison, prior to selling his said 4½ street property, had rented the same out, and at one time rented the same to the District Government, but did not and had not used or occupied the same for or as a home or residence for himself or for his wife or for any of the members of his family ; that prior to the consummation of the sales of his said Pennsylvania avenue property and his said 4½ street property the said William H. Morrison told this affiant, as to each of those sales, that he

city of Washington for many years, where he conducted a large business as a publisher and seller of books. About two years before the attachment he took his family to a place in Maryland just outside the District of Columbia, where they were living at the time. The defendant remained with his family at night, coming into Washington every morn-. ing, when not sick, or absent on business, and remaining at his place of business, during business hours, where he was accessible to all persons, and amenable to the process of the District courts. He had sold the Maryland home a short

intended to apply the proceeds which he received therefrom in paying others of his creditors to whom he was indebted and in reducing his indebtedness to them, and after each of those sales told this affiant that he had done so, with the exception of a small amount, possibly a few thousand dollars, which this affiant understood him to say he had paid out and expended in aiding and assisting his son, Walter C. Morrison, who had then recently married; that at the time of each of these sales the said William H. Morrison was indebted to this affiant and also to this affiant's brother, Leigh Robinson, and had received full value from each of them for his said indebtedness to each of them respectively; that neither this affiant nor his said brother demanded, as each of them at that time had a right to do, that said William H. Morrison should pay anything to them or to either of them out of the proceeds of said sales or of either of said sales, nor did this affiant or his said brother ever so request, but, upon his statement that he would pay the purchase-money received from each of those sales to his other creditors, acquiesced in his doing so; and afterwards, with the same wish to indulge him as far as possible, this affiant, on January 2, A. D. 1891, for said indebtedness then due from said William H. Morrison to this affiant and unpaid, took the promissory note sued upon in the above-entitled cause, and this affi-ant's said brother, on the said 2nd day of January A. D. 1891, for the indebtedness then due from said William H. Morrison to him, took the promissory note sued upon in cause No. 33203 in this court; that upon the sale of his said Pennsylvania-avenue property (No. 475 Pennsylvania avenue) the said William H. Morrison removed his place of business and book store from there up to No. 1334 F street N. W., in the city of Washington, D. C., which said store No. 1334 F street N. W., he used as a book store and place of business, and only as a book store and place of business, from that time up to the time of making an assignment on the 17th day of August, A. D. 1892, and that neither he nor his wife nor any of his family ever occupied or used the same as a home or place of abode or residence; that he did not own said store No. 1334 F street N. W., but only rented the same; that when he was negotiating the sale of his said Pennsylvania-avenue property (No. 475 Penn-sylvania avenue N. W.) said William H. Morrison told this affiant that he had concluded to sell the same and to rent a store on F street, and afterwards told this affiant that he had rented No. 1334 F street N. W. for his store; that a considerable time ago (possibly two years or more ago) the said William H. Morrison told this affiant that he had con-

time prior to the commencement of the suit, but remained therein with his household furniture, which was worth about $500. The remainder of his property consisted of his stock of books, &c., in the Washington store, valued at about $20,000. He was not engaged in business anywhere else, and kept his bank account in Washington exclusively. The foregoing facts are taken from Morrison's own affidavit. To these he added the conclusion that there was no intention on his part to " cease to be a citizen and resident of the District of Columbia."

---

cluded to move his things from his house No. 214 E street northwest, Washington, D. C., out to his house in Prince George's county, Maryland, which he had gotten as a part of the consideration for his said Pennsylvania-avenue property, and to go out there to his said Prince George's county house with his wife and family to live, and that by so doing he would be able to sell his house and lot No 214 E street N. W., and to apply the proceeds thereof in reducing his indebtedness, and that he thought he would prefer living out there (in his said house in Prince George's county, Maryland) anyway ; and shortly thereafter he told this affiant that he had moved out to his said house and lot in Maryland, and that both he and his family were pleased, and that they liked living out there very much ; that by a deed dated June 8, A. D. 1891, and recorded on June 11, A. D. 1891, in Liber No. 1590, folio 209 *et seq.*, of the land records of said District, the said William H. Morrison and Martha K. Morrison, his wife, having sold the same, conveyed in fee simple to Eugene A. Rigway said William H. Morrison's said house and lot on E street (214 E street N. W.), being part of original lot 4 and part of lot 5 of Margaret O. Diggs' recorded subdivision of original lot No. 5 *et al.*, in square No. 570, in the city of Washington, in the District of Columbia, beginning for the same at a point on the north line of said lot numbered 4, distant 14 feet 6 inches from the northeast corner of said lot, and running thence east 20 feet 9⅓ inches, thence south 112 feet to an alley, thence west 20 feet 9⅓ inches, and thence north 112 feet to the place of beginning ; that there had been some delay between the sale and conveyance of said E-street lot—this affiant does not remember exactly how much ; that before the said conveyance of his said house and lot No. 214 E street N. W. said William H. Morrison told this affiant that he had succeeded in selling the same and that he would apply the purchase-money in reducing his indebtedness ; that this affiant and his brother, Leigh Robinson, neither demanded or requested that he apply any part of the purchase-money to the payment or reduction of their or either of their claims against him, but acquiesced in his paying the same to his other creditors (although they did not recognize or consider any of his other creditors as having any higher claims than their own)', and that they neither of them ever received any part of the purchase-money of said property ; that the said William H. Morrison with his wife and family lived at said house, No. 214 E street northwest, for some years prior to and up to the time of moving his things and going with his wife and family to live at his said house and place in Prince George's

It appears from plaintiff's affidavits, and was undenied, that defendant had once owned valuable real estate in Washington, as well as a family home, but had disposed of the same before removing to the Maryland home, which he had taken in part payment in one of his sales of real estate. In a mortgage made May 27, 1891, and in a conveyance made of the Maryland property, August 13, 1892, defendant is recited as of Prince George's county, Maryland. It was also shown that defendant and his son registered in Prince George's county, Maryland, as voters, in 1891, and

---

county, Maryland, as aforesaid; but that since that time he has not lived in said E-street house nor in the District of Columbia, but has continued to live with his wife and family at his said house and place in Prince George's county, Maryland, ever since he first moved out there, and that from that time up to the present time said house in Prince George's county, Maryland, has been the actual home, residence, and place of abode of the said William H. Morrison and of his wife and of the members of his family, at which he has regularly and continuously slept and passed his nights and Sundays and holidays with his wife and family, and to which as soon as his business engagements and duties permitted he went after finishing his daily business and labors to find the comfort, rest, and relaxation of a "home" with his wife and family, there to attend to his domestic duties; and that from the time that said William H. Morrison moved out to his said house and place in Prince George's county, Maryland, it has been continuously and regularly up to the present time the home, the place of abode, and the residence of the said William H. Morrison and of his wife and family, and that from the time that said William H. Morrison conveyed his said E-street house and lot as aforesaid he has certainly up to the present time had no home, residence, or place of abode whatsoever either in the city of Washington or in the District of Columbia; that during all of said period he had no place with any of the conveniences of a home, a place of abode, or of a residence in the city of Washington or in the District of Columbia; that during the whole of said period he has neither owned nor rented nor had in the District of Columbia any house, apartments, room or place of any kind (not even at his store, No. 1334 F street N. W.) to which he could take his wife or family or go himself to pass the night or to sleep or which in any way answered to the description of a home, a place of abode, or a residence; that said store, No. 1334 F street N. W., had no arrangements for being used and never was used for any purpose except as a store and place of business, and never was arranged for being used or used by himself, his wife, or family as a place to sleep or to pass the night or as a home, place of abode, or residence; that shortly before— that is to say, a few days before—the institution of this suit said William H. Morrison told this affiant that he had two deeds of trust upon his said house and lot in Prince George's county, Maryland; that he first said it was encumbered for $3,000, and afterwards said it was more than that; that he did not remember the amount of the notes secured upon said property and could not then say to exactly what amount it was encum-

voted at an election held therein.   Under the laws of Maryland, no one could register as a voter without first making oath that he had been a citizen and resident of the State for one year and of the county for six months.

It appears from the record, that the defendant was served with a summons on the day the suit was filed in the District of Columbia, by the marshal thereof.

Fillmore Beall filed a petition intervening in the proceedings to quash, alleging that on August 16, 1892, defendant Morrison made an assignment to him for the benefit of

---

bered, but could and would ascertain by the next day ; that this conversation occurred upon the Thursday evening immediately preceding the institution of this suit—that is to say, upon August 11, 1892—and upon this affiant then offering, along with his brother, Leigh Robinson, to take a third deed of trust upon his said house and lot in Prince George's county, Maryland, if he would let us know the amount of the encumbrances thereon and there was any margin in his equity of redemption therein, he, the said William H. Morrison, made an appointment for the next day, Friday, at his store, No. 1334 F street N. W., at 2.30 p. m., to meet us, when he was to let us know the amount of the encumbrances upon his said house and lot in Prince George's county, Maryland, and what he would do ; that said William H. Morrison did not keep his said appointment, and this affiant, although he endeavored to see him and sent him written and verbal messages to see affiant, designating time and place, has never seen him since ; that Boyd's Directory of the District of Columbia for the present year, 1892, gives said William H. Morrison's " h "—meaning house or home—as being at " Riverdale, Md. ;" that affiant says that certainly from the time of said William H. Morrison's conveyance of his said house and lot on E street, in this city (No. 214 E street N. W.), if not from the time that said Morrison moved his things from his said E-street house to his said house and lot in Prince George's county, Maryland, and went out there to Prince George's county, Maryland, to live, he, the said William H. Morrison, has been a non-resident of the District of Columbia, and has been an actual resident of and has had his actual and his legal residence in Prince George's county, Maryland, and has been subject to attachment in the District of Columbia as a non-resident of said District.

That in a certain mortgage dated and acknowledged on May 27, A. D. 1891, and recorded on June 3, 1891, in Prince George's county, Maryland, in Liber J. W. B. No. 17, folio 714 *et seq.*, one of the land records of said Prince George's county, Maryland, and also in a certain deed dated and acknowledged on August 12, A. D. 1892, and recorded on August 13, 1892, in Prince George's county, Maryland, in Liber J. W. B. No. 21, one of the land records of said Prince George's county, Maryland, the said William H. Morrison and Martha K. Morrison, his wife (the grantors in said mortgage and in said deed and who each of them executed and acknowledged the same), recite themselves as being of Prince George's county, Maryland, as will more fully and at large appear by duly authenticated copies of the records of said mortgage and deed (hereby expressly

creditors, and repeating substantially the facts set forth in Morrison's affidavit with respect to his residence.

It seems that the property was attached just before the deed of assignment was executed and delivered, wherefore the assignee stands in no better position than his assignor.

---

referred to as parts hereof and asked to be considered in opposition to the quashing of the attachment in this case), marked respectively Exhibits "A" and "B" for identification and filed in this cause and in cause No. 33203 in this court on the day this affidavit is filed herein; that said William H. Morrison has owned no real estate in the District of Columbia since he conveyed away his said E-street property as above mentioned. CONWAY ROBINSON, JR.

Subscribed and sworn to before me this 27th day of August, A. D. 1892.
J. R. YOUNG, *Clerk.*

---

Exhibit "A" (filed August 27, 1892) is a duly certified copy of the record of a mortgage by "William H. Morrison and Martha K. Morrison, his wife, of Prince George's county, Maryland," to "Frederick A. Tschiffely, Jr., his heirs and assigns," dated May 27, 1891, and recorded on June 3, 1891, in Prince George's county, Maryland, in Liber J. W. B. No. 17, folio 714 *et seq.*, one of the land records of said Prince George's county, Maryland, conveying said William H. Morrison's said house and lot in Prince George's county, Maryland, to secure $2,000 to said Frederick A. Tschiffely, Jr.

---

Exhibit "B" (filed August 27, 1892) is a duly certified copy of the record of a deed by "William H. Morrison and Martha K. Morrison, his wife, of Prince George's county, Maryland," to "Frederick A. Tschiffely, Jr., of said county and State," dated August 12, 1892, and recorded on August 13, 1892, in Prince George's county, Maryland, in Liber J. W. B. No. 21, one of the land records of said Prince George's county, Maryland, conveying said William H. Morrison's said house and lot in Prince George's county, Maryland, to said Frederick A. Tschiffely, Jr., in fee simple for the consideration of $6,000.

---

I, Thomas Brooke, on oath say that I am acquainted with William H. Morrison, the defendant in the above-entitled cause, and know that for several years past he has been a resident of Prince George's county, Maryland. Affiant was the registration officer of Prince George's county, Maryland, until last November and was the last registration officer of said county. Affiant registered the names of the said William H. Morrison and one of his sons as voters in said county. Affiant saw them at the polls on the day of the election. Affiant registered no one who did not first make oath that he had been a resident and citizen of Maryland a year before registration and of Prince George's county for six months, and affiant did administer such an oath to the said William H. Morrison and his son. THOS. BROOKE.

Subscribed and sworn to before me this 23rd day of August, 1892.
J. R. YOUNG, *Clerk,*
By R. WILLETT, *Assistant Clerk.*

The question before us involves the consideration of the object and policy of the attachment law of the District, as indicating the sense in which the word *non-resident* is therein used. The contention of appellee, which prevailed in the court below, is, that it is the object of the law to furnish a remedy against a debtor's property in cases only where, through his absence or concealment, etc., the ordinary process of the court cannot be served upon him; and that the word non-resident, as used in the act, does not apply to one who, while he may remain every night with his family outside the District, is daily within it attending to his business, and subject to service of process at any time each day. In other words, it is contended that there is a " commercial residence," so to speak, which exempts one, situated as Morrison, from liability to attachment as a non-resident in the ordinary sense.

Unquestionably, the object of the process originally was to coerce the defendant into submitting himself to the jurisdiction of the court, where he might also be compelled to enter into special bail. This done, the writ having accomplished its purpose might be dissolved. This object doubtless had its influence upon the earlier legislation of the older States, in some of which possibly there may not have been a change of policy. But the great tendency of all late legislation, especially since the general abolition of imprisonment for debt, has undoubtedly been towards the enlargement and extension of remedies against the property of defendants in actions. This departure in policy and the reasons therefor, are strongly set forth in a leading case in Maryland. *Barr* v. *Perry*, 3 Gill, 315, decided in 1845.

The object now is not so much to coerce the defendant into making his appearance, as it is to give the plaintiff security for his demand. " If the defendant appears, the cause becomes mainly a suit *in personam*, with the added incident, that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the

court.    But, if there is no appearance of the defendant, and no service of process on him, the case becomes, in its essential nature, a proceeding *in rem*, the only effect of which is to subject the property attached, to the payment of the demand which the court may find to be due to the plaintiff." *Cooper* v. *Reynolds*, 10 Wall., 318.

The attachment act of the State of Tennessee, upon which that case was founded, is not nearly so plain in its purpose to give security for the debt through the property attached, as is the statute of the District of Columbia, which governs this case.    Sec. 782, R. S. D. C., states three grounds for the issuance of the writ: " First, that the defendant is a nonresident of the District; or, second, that the defendant evades the service of ordinary process by concealing himself, or by withdrawing from the District temporarily ;  or, third, that he has removed, or is about to remove, some of his property from the District, so as to defeat just demands against him."

Sec. 783, which has been quoted above, provides how the attachment, when regularly issued, may be quashed by disproving the facts upon which it has been obtained; and seems thereby to exclude the idea that there is any other mode in which the writ may be quashed and the property discharged.

Had the right to attach the goods been given merely to compel the appearance of the defendant, it would seem that the act should so declare.    Secs. 784, 785, and 786, and others following them in order, seem to us to remove all doubt as to the real object of the act.

" Sec. 784. The thing attached shall not be discharged from the custody of the officer seizing it until the defendant shall deliver either to the officer or to the clerk, to be filed in the cause, his undertaking, with sufficient surety to satisfy and pay the final judgment of the court against him.

" Sec. 785. If the defendant fail to execute such undertaking, the court may sell the thing attached whenever it is satisfied that it is in the interest of the parties it should be sold before final judgment.

" Sec. 786. In case the defendant be found liable to the plaintiff's claim, in whole or in part, the final judgment shall be that the plaintiff recover against the defendant and his sureties."

Sec. 787 provides for service by publication upon defendants who cannot be found, in suits by attachment and others.

Sec. 791 abolishes the holding of persons to bail in actions of debt and the like.

The view we have taken of the object of these sections of the Revised Statutes is in accord with that of the General Term of the Supreme Court of the District. *Giddings* v. *Squier*, 4 Mackey, 49.

In other jurisdictions, under statutes of the same general purport as ours, it has generally been held that their purposes were not fulfilled by the ability to make personal service of summons upon the defendant at the time of instituting the suit and suing out the writ of attachment. *Jackson* v. *Perry*, 13 B. Mon., 231; *Pike* v. *Wassell*, 94 U. S., 711; *Chase* v. *Bank*, 56 Pa. St., 355; *Breed* v. *Mitchell*, 48 Ga., 533; *Barry* v. *Bockover*, 6 Abb. Pr., 374; *Chaine* v. *Wilson*, 8 Abb. Pr., 78; *Fielding* v. *Lucas*, 87 N. Y., 197; *Burcalow* v. *Trump*, 1 Houst. (Del.), 363; *Rayne* v. *Taylor*, 10 La. Ann., 726; *Larimer* v. *Kelley*, 10 Kan., 312.

The word non-resident, as used in our statute, must be taken in its ordinary and usual signification. A man's residence is where he actually dwells at the time, not merely where he may carry on business regularly. A man's domicile may be in one State, his residence in another, and his place of business in a third. A man's home, the place where his wife and children actually reside, is ordinarily, and yet not necessarily, his place of residence. He may for purposes of business establish himself in another State for an indefinite period, away from his family, and remain there so continuously as to make himself a resident thereof for all the purposes of the attachment laws generally. But he cannot be a resident of two distinct places at the same time. If defendant had provided himself a dwelling place in Washington,

living there instead of with his family in Maryland, and only going to them occasionally, as a visitor, he might be considered a resident of the District within the meaning of the act. But that is not the case made in the record before us. He removed his family to a home in Maryland for an indefinite period, and lived there with them, spending each night there and having no dwelling or sleeping place in Washington. He spent the hours of business only in Washington, while he spent his nights and Sundays in Maryland. He registered and voted in Maryland, and in order to do so was compelled by law to make oath to both residence and citizenship. Under the evidence in this case, could he have been held an illegal voter?

Suppose, for instance, that he had been sued and attached in Maryland on the same day, could he have been held a non-resident of that State under the evidence in this case? Would the mere fact that he spent each day but Sunday in Washington attending to his business, and could only be personally served with process in Maryland at night, constitute him a non-resident of that State? We think clearly not.

If, then, defendant is to be held as a resident of the District, at the time the writ was issued, it must be on the sole ground that there is such a thing as a "commercial" or "trade" residence, created solely by the conduct of business which is co-existent with actual residence elsewhere, and yet in law superior thereto. To give this meaning to our attachment statutes would be making laws instead of interpreting them. Grant that it would be just and fair that such a distinction should be made in the interest of those whose sole business is carried on in this District, while they actually reside near by in adjoining States; but still the power so to do is legislative, and not judicial. We must interpret the law as we find it; that is to say, give it full force and operation where there is no reasonable room for construction, regardless of any hardship that it may work.

The view we have taken of this question is, we think, sound in principle; unquestionably it is supported by the

great weight of authority. In New Jersey the question has been thoroughly considered as well as argued with great force in respect both to the policy of the law and the meaning of the word non-resident, under statutes substantially like our own. In *Perrine* v. *Evans*, 35 N. J. L., 221, the defendant carried on his business in New Jersey, where he was to be found daily during working hours. His wife boarded at a house in New York and he went there every night. He had no home and no lodging place in New Jersey. It was held that attachment rightly issued against him as a non-resident of New Jersey, notwithstanding he might have been served with a process therein. The court said: "A residence is always a place of abode. It never denotes simply the place where a man is, or happens to be. . . . To contend that to be in a State signifies the same thing as to reside in a State is to raise a quarrel with all usage and every lexicon. If there is any fixedness of meaning in words, the description in this statute of ' debtors who reside out of this State,' means debtors who have no abode in this State. In this connection, the language used, as it seems to me, is indisputably clear, and the consequence is that there is no room for judicial construction." Again, it was said in the same opinion: "It is obvious that the fact that the debtor has a place of business in this State is altogether aside from the inquiry, as a place of business is not, in any possible sense, a residence and is a circumstance of no benefit to the creditor." To the same effect, see *Stout* v. *Leonard*, 37 N. J. L., 492 ; *Baldwin* v. *Flagg*, 43 N. J. L., 495.

In *Rayne* v. *Taylor*, 10 La. Ann., 726, the defendant in attachment had for several years maintained a business house in the State, where he was often to be found, and where in his absence an agent was always to be found who was authorized to be served with process for his principal. His claim of exemption from attachment by reason of his " commercial domicile " or residence, was overruled. The court said: " The law makes no distinction between the different classes of non-resident creditors, and we are unable to per-

ceive upon what principle of reason the defendant in this case can claim an exemption from the ordinary operation of our attachment laws."

On account of peculiar conditions prevailing in New York, this question has been often before the courts of that State, and it has been generally held, with possibly one exception, by the Supreme Court thereof, that the fact that a man carries on his business exclusively and continuously in the State, and stays there daily during business hours, does not make him a resident thereof within the meaning of the attachment law. *Barry* v. *Bockover*, 6 Abb. Pr., 374; *Chaine* v. *Wilson*, 8 Id., 78; *Lee* v. *Stanley*, 9 How. Pr., 272; *Bache* v. *Lawrence*, 17 Id., 554; *Murphy* v. *Baldwin*, 41 Id., 270; S. C., 11 Abbott Pr., N. S. 409.

The same doctrine is now firmly established by the Court of Appeals, in *Wallace* v. *Castle*, 68 N. Y., 370, wherein *Towner* v. *Church*, 2 Abb. Pr., 299, the exceptional case mentioned above, is expressly overruled, in so far as it expressed an opinion to the contrary. See also *Fielding* v. *Lucas*, 87 N. Y., 201, where, under a statute conferring power upon the marine court to issue attachments on the ground of non-residence in the county of New York, it was held that attachment rightfully issued against one living in Brooklyn, whose business was regularly and exclusively carried on in the county of New York.

In *Cowardin* v. *Universal Ins. Co.*, 32 Gratt., 447, it was held, that a foreign insurance company, doing business in Virginia, under the law of that commonwealth, permitting the same and regulating the exercise of the right, and requiring it to keep an agent there, upon whom service in suits against the corporation could be obtained, was, nevertheless, a non-resident of Virginia within the meaning of her attachment laws.

We attach no importance to the declaration in defendant's affidavit that his removal to the Maryland home was " without any intention to cease to be a citizen and resident of the District of Columbia," because on a question of residence

intention cannot control the fact. *In re Thompson*, 1 Wend., 45 ; *Frost* v. *Brisbin*, 19 Wend., 11 ; *Stout* v. *Leonard*, 37 N. J. L., 494 ; *Risewick* v. *Davis*, 19 Md., 96 ; *Greene* v. *Beckwith*, 38 Mo., 384 ; *Lawson* v. *Adlard*, 46 Minn., 243 ; *Hanson* v. *Graham*, 82 Cal., 631.

Residence, in the sense of the attachment laws and domicile, as bearing on the question of citizenship, are two distinct and very different things. Actual dwelling for a sufficient space of time constitutes such residence, without regard to intention expressed or concealed; while domicile is chiefly a question of intention.

In this connection it may be said, too, that the fact of defendant's registration and exercise of the right of suffrage in Maryland would be a very strong, if not controlling, circumstance to show that his domicile, as a citizen, was in Maryland also, as well as his residence, if that question, too, were in issue here.

It has been suggested, on the argument, that pending the motion to quash the attachment the goods attached were taken from the possession of the marshal by some proceeding instituted by the assignee of defendant, who had intervened, as we have seen, in the proceedings to quash.

There is nothing in the record with regard to this proceeding, and we are not called upon to determine it, or to express an opinion whether property already in the custody of the law, through valid process, can again be seized under process issuing from the same court even.

Be that as it may, the right of plaintiff to condemnation of the property seized under his writ cannot be affected by any subsequent proceeding with respect to it, to which, at least, he is not a regularly made party. It is the marshal's concern to take care that plaintiff's security be not lost.

*For the error in quashing the writ of attachment the judgment must be reversed, with costs to the appellant, and the cause remanded for further proceedings in accordance with this opinion ; and it is so ordered.*

Mr. Justice Morris dissented.