## BROWN v. AMERICAN STORES, Inc.

### No. 78.

Municipal Court of Appeals for the District of Columbia.

June 8, 1943.

Lowell J. Grady, of Crookston, Minn. (Thomas I. Emerson, Senior Associate General Counsel, and Fleming James, Jr., Chief, Litigation Branch, both of Washington, D. C., David London, Principal Attorney, of Minneapolis, Minn., and Edward H. Hatton, Attorney, Office of Price Administration, of Washington, D. C., on the brief), for intervenor-appellant.

Walter E. Gallagher, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Josephine McCorry filed a consumer action against American Stores, Inc., in the Small Claims and Conciliation Branch of the Municipal Court for the District of Columbia, claiming the sum of $50 for an alleged violation of the Emergency Price Control Act.[1] Her complaint states that on November 14, 1942, at appellee's store at 17th and Corcoran Streets, N.W., she paid an excess charge on the purchase of a can of Campbell's soup.

On March 13, 1943, Prentiss M. Brown, Administrator of the Office of Price Administration, filed a petition for leave to intervene under Section 205(d) of said Act.[2]

Leave to intervene was granted, the case was tried, a finding and judgment for the plaintiff for the sum of $5 was entered, and the following exception noted: "The O. P. A., thru Mr. Hatton notes exception to the Court's finding and judgment for plaintiff for $5.00 and not for $50.00."

On March 17, 1943, Prentiss M. Brown, as administrator and intervenor, applied

---

[1] Public Law 421—77th Congress, Chap. 26—2d Session, 50 U.S.C.A. Appendix § 901 et seq.

[2] This section provides in part: "In any suit or action wherein a party relies for ground of relief or defense up- on this Act or any regulation, order, price schedule, requirement, or agreement thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such suit or action."

to this court for the allowance of an appeal from said judgment. This application we granted.[3] Plaintiff McCorry did not apply for an appeal.[4]

At the trial it was shown that on November 14, 1942, plaintiff purchased a can of so-called "Old Style" Campbell's soup, the ceiling price for which was 10 cents, for which she paid the cashier 14 cents.

About four weeks before this sale, Campbell's Soups had placed on the market a new soup product identified as "New Recipe" on which the ceiling price was 14 cents. The cans containing the old and new products were placed on the same shelf, with the respective price ceilings properly posted and the shelves properly marked. A witness, one Perry, who accompanied plaintiff, testified that the prices were correctly posted and the shelves correctly marked.

For convenience of its cashier appellee had adopted a practice of having its clerks place a crayon mark indicating its price on each article on its shelves. The can purchased by plaintiff was improperly marked 14 cents instead of 10 cents. This it appears resulted from the inadvertence of an employee. There was no evidence of an intent to violate the price ceiling regulations. It does not appear whether the plaintiff, having selected the can from a shelf properly marked, realized at the time that an overcharge was made by the cashier, or called attention to the error.

Upon these facts we think the trial court properly awarded plaintiff judgment for a sum less than the extreme penalty of $50. Its judgment served the purpose of adequately compensating the consumer for the overcharge, and of a warning to this and other storekeepers that the highest degree of care must be exercised to avoid mistakes in ceiling prices.

In Hall v. Chaltis [5] we held that a consumer's right to bring an action for the sum of $50, conferred by Section 205 (e) of the Emergency Price Control Act, did not make a judgment for this amount mandatory in the absence of language imposing a fixed liability on the seller. Our decision on that appeal, to which both the plaintiff therein and the administrator as intervenor were parties, covers the instant case. Neither party applied to the United States Court of Appeals for the District of Columbia for a review. After careful consideration of the opinion we then rendered, we adopt it as the basis for our present decision. The circumstances of the case before us serve to further impress us with the soundness of its reasoning, that Congress could not have intended to penalize alike the inadvertent mistake of the merchant who honestly and intelligently endeavors to comply with the law and the contumacy of one who dishonestly violates it.

Affirmed.

HOOD, Associate Judge (dissenting).

The effect of the majority opinion is that while Section 205(e) of the Emergency Price Control Act of 1942 permits an overcharged consumer to bring an action for $50, where the overcharge trebled does not exceed that sum, he is entitled to recover only such sum, not exceeding $50, as the trial court or jury thinks proper under all the circumstances of the case. I am unable to find anything in the Act which justifies this interpretation.

In Hall v. Chaltis the majority opinion discussed this question, but I did not think such discussion necessary to the decision of that case. There, the question was whether the defendant, because of lack of notice or opportunity to acquire notice of the changed price schedule, had violated the Act. The trial court had found, at least in effect, no violation, for it awarded no damages and gave judgment merely for the admitted overcharge. This court affirmed.

---

[3] Act of April 1, 1942, Public Law 512 —77th Congress, Sec. 7 (a), 56 Stat. 190, 195.

[4] The appeal here is by the Administrator as intervenor, and not by the plaintiff. The intervenor is not a party to the judgment below. His interest is not in the subject of the particular suit, but in the rule of law involved in its decision. Our statute (Act of April 1, 1942, supra) authorizes an appeal by "any party aggrieved by any final order or judgment".

A question may hereafter arise as to the right of the administrator to prosecute an appeal under these circumstances, but as counsel have not raised the point either in briefs or argument we have not decided it. See United States of America and Edward Roack v. Dick Johnson, May 24, 1943, 63 S.Ct. 1075, 87 L.Ed. —.

[5] 31 A.2d 699.

In the present case the excessive charge trebled was twelve cents and the purchaser sued for the statutory sum of $50. The trial court found there was a violation and gave judgment for $5. The sole question here is should the trial court have given judgment for $50?

Section 205(e) of the Act provides that if any person sells a commodity in violation of the price schedule, "the person who buys such commodity * * * may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater." Leaving aside the treble amount of overcharge, the section mentions only one sum, namely, $50, and nothing is said regarding judgment for a lesser sum.

The majority opinion in the Hall case, relied upon by the majority here, lays stress upon the words "bring an action". and says the bringing of an action is but the commencement of the suit and is conclusive of nothing. If we are to give the words of the statute this strained and restricted meaning, then logically we should hold that plaintiff had no right to prosecute her suit since the statute only gave her the right to commence it, and there is a well recognized difference between commencing a suit and prosecuting it after its commencement.[6]

In construing a legislative act, our primary purpose should be to ascertain the intention of the enacting body.[7] We should assume that words in the statute are used in their usual and ordinary sense,[8] and we should not attempt to ascertain their meaning by strict or strained interpretation of the words or by applying artificial canons of construction. If a doubt exists that doubt should be resolved in the light of the situation with reference to which it was enacted,[9] and the policy intended to be served by the enactment. [10]

We have no power to make additions to the statute which we think Congress logically might have or should have made.[11] Questions of policy, of the wisdom of the legislation, of the appropriateness of the remedy provided, are for the legislature and not for the courts.[12] Congress selects the sanction for the law's enforcement,[13] and we must give full force and operation to the statute regardless of any hardship it may appear to work.[14]

The section here involved is found in the enforcement provisions of the Act. A similar provision was contained in H. R. 5479, entitled "Emergency Price Control Act of 1941," as originally introduced in the House of Representatives. After hearings on that bill the Committee directed the introduction of a new bill. The new bill, H. R. 5990, passed by the House, did not contain such a provision. At the hearings before the Senate Committee,[15] the Administrator of the Office of Price Administration urged that the provision be restored to the bill as an aid in the enforcement of the Act, saying in part: "As originally written, the bill provided that ultimate buyers (or in certain cases, the Administrator) might sue sellers for treble the amount of their overcharge, or for $50 (whichever the greater) or for rescission of their contracts. The House bill struck out these provisions. The result is to deprive consumers of remedies which they require and to add greatly to the enforcement burden of the Office of Price Administration. They should be restored to the bill."

Among the Senate amendments was Section 205(e). The Senate report[16] stated: "To discourage initial violations, the committee substitute provides for actions at law to recover $50 or three times the amount of the illegal overcharges. This will permit private purchasers who buy for

[6] Cohens v. Virginia, 6 Wheat 264, 408, 5 L.Ed. 257; Wall v. C. & O. Railway Co., 290 Ill. 227, 125 N.E. 20; Buecker v. Carr, 60 N.J.Eq. 300, 47 A. 34.

[7] United States v. Rosenblum Truck Lines, 315 U.S. 50, 53, 62 S.Ct. 445, 86 L.Ed. 671.

[8] Federal Housing Administration v. Burr, 309 U.S. 242, 246, 60 S.Ct. 488, 84 L.Ed. 724.

[9] District of Columbia v. Murphy, 314 U.S. 441, 449, 62 S.Ct. 303, 86 L.Ed. 329.

[10] United States v. Cooper Corp., 312 U.S. 600, 605, 61 S.Ct. 742, 85 L.Ed. 1071.

[11] United States v. Cooper Corp., supra.

[12] Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 394, 60 S.Ct. 907, 84 L.Ed. 1263.

[13] Sunshine Anthracite Coal Co. v. Adkins, supra, 310 U.S. page 401, 60 S.Ct. 907, 84 L.Ed. 1263.

[14] Robinson v. Morrison, 2 App.D.C. 105, 125.

[15] Senate Hearings, p. 189.

[16] Senate Rep. No. 931, 77th Cong., 2d Sess., p. 8.

personal use or consumption, rather than in the course of trade or business, to protect themselves against violations of the act."

The bill as passed by the Senate was sent to conference and the conference report,[17] referring to Section 205(e), stated: "The Senate amendment also contains a further provision, retained in the Conference Agreement, which permits a civil action by non-commercial consumers for treble the amount of any unlawful overcharge (or a minimum of $50) made by any seller of any commodity subject to a price ceiling. The operation of this provision, however, is postponed until 6 months after the effective date of the bill."

I find nothing in the Act or its legislative history indicating that the action "for $50" given the consumer is subject to the court's discretion of awarding a lesser sum.

It seems to me that this section imposes a penalty on violators as a means of enforcing the Act. While not a penal statute in the strict sense,[18] it is penal in the sense that it imposes an extraordinary liability upon the wrong-doer in favor of the person wronged, not limited to the damages suffered.[19] As I see it, the primary purpose of this section is to punish the seller charging more than the maximum price. The imposition of a penalty for the purpose of enforcing a statute is no new device.[20] While the sum of $50 contrasted with the overcharge may seem large, we may assume that Congress had in mind the interest of the public to be protected, the numberless opportunities for violation, and the need for securing strict compliance with the price schedules.[21] To secure the cooperation of the public in enforcing the Act, Congress, it seems to me, fixed a minimum recovery, recognizing that the overcharge even when trebled in many cases would be so small that no effort would be made by the purchaser to obtain redress unless furnished some assurance of a minimum recovery.[22] And it does not seem to me that Congress intended to encourage purchasers to bring actions by holding out to them the sum of $50 and at the same time intended that sum could be reduced by the court according to its individual judgment of the proper amount to be awarded.[23] If it intended that good faith, inadvertence or mitigating circumstance of any kind should be taken into consideration in fixing the amount, such intention would surely have been expressed by appropriate language. The section expressly provides that attorney's fees and costs allowed in such actions shall be "reasonable" and "determined by the court."

The penal characteristics of the law do not require such a strict construction of it as will defeat the very object of the statute.[24] Even the rule of strict construction as applied to criminal statutes will be relaxed in interpretation of an act designed to declare and enforce a principle of public policy.[25]

The majority opinion states that the violation in this case was the result of a mistake and was not done with an intention of violating the regulation. Section 205(e), however, refers to a violation, and not an intentional violation. Criminal prosecutions under Section 205(b) are limited to those who "wilfully" violate the Act, but I see nothing in 205(e) which makes a distinction between intentional and unintentional violations. The appellee had ample notice of the price schedules and ample opportunity to take the necessary precautions to avoid violations. Congress

[17] H. R. Rep. No. 1658, 77th Cong., 2d Sess., p. 26.

[18] Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123.

[19] O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980.

[20] Western Union Telegraph Co. v. Crovo, 220 U.S. 364, 31 S.Ct. 399, 55 L.Ed. 498.

[21] St. Louis, I. M. & S. R. Co. v. Williams, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139.

[22] Missouri Pacific Railway Co. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L. Ed. 463.

[23] Reference has been made throughout this opinion to the question of the discretion of the court because the instant case was heard by the trial court without a jury. Either party, however, in this and like cases, has the right to demand trial by jury. If the opinion of the majority is correct, in such cases the amount of the judgment would be left to the jury. Upon what basis would a jury determine the amount? As the Administrator pertinently asked in his brief, what instructions will the court give the jury on the question of damages?

[24] Clark v. Barnard, 108 U.S. 436, 2 S. Ct. 878, 27 L.Ed. 780.

[25] District of Columbia v. Horning, 47 App.D.C. 413, 423.

**392**

has the power to declare an offense and to exclude the elements of knowledge and due diligence from any inquiry as to its commission.[26] It is for the legislature, and not for the court, to determine whether the public injury threatened is such as to justify an absolute and indiscriminate prohibition.[27]

I can find nothing in the Act which gives the court, when a violation has been proved in an action under 205(e), discretion in awarding any lessor sum than $50. Perhaps there should be, but that is a matter for Congress and this court has no power, by way of judicial construction, to insert such a provision.

In my opinion, the judgment below should be reversed with instructions to enter judgment for the plaintiff in the sum of $50.

[26] Chicago, B. & Q. Railway Co. v. United States, 220 U.S. 559, 578, 31 S. Ct. 612, 55 L.Ed. 582.

[27] Commonwealth v. Weiss, 139 Pa. 247, 21 A. 10, 11 L.R.A. 530, 23 Am.St. Rep. 182.