THE PEOPLE OF THE STATE OF NEW YORK, THE PRESI-DENT, MANAGERS and COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY and others, *vs.* SIMON SCHOON-MAKER, SIMON P. KEATOR and SILAS SNYDER.

A leading and controlling rule in the construction of statutes is to interpret them according to the true meaning and intent. To ascertain this intent, it is the duty of the court to find by established rules what was the fair, natural and probable intent of the legislature.

For this purpose, the language employed in the act is first to be resorted to. If the words employed are free from ambiguity and doubt, and express plainly and distinctly the intent, according to the most natural import of the language, there is no occasion to look elsewhere.

But when the meaning of words is doubtful, and where it is seen that the same words have different meanings, when employed under different circumstances,

The People *v.* Schoonmaker.

or to effect different objects, resort may be had to extrinsic circumstances; and the courts may seek for that intent in every legitimate way.

A statute authorized commissioners, who were to be appointed for that purpose, to subscribe, in the corporate name of a town, to the capital stock of a railroad company, and to issue bonds in the name of the town, therefor; *Provided,* however, that "no subscriptions to stock shall be made, or bonds issued, until the consent in writing, specifying the amount of such subscription and bonds to be issued, be first obtained, of a majority of the tax-payers * * appearing on the last assessment roll of such village or town, representing a majority of the taxable property of the residents of said town," &c. *Held* that it was not the intent and meaning of the legislature, nor the spirit of the act, that a canal corporation owning property within the town, and paying taxes thereon, but whose principal office and place of business was elsewhere, should be included in the language of the statute— " the *residents* of said town."

*Held, also,* that this construction, flowing from the language of the statute, was confirmed by looking at the extrinsic circumstances existing at the time of, and prior to, its enactment, viz., the holding of a meeting by the resident tax-payers of the town, and the passing of a resolution to apply to the legislature for such a change of the law contained in a previous act, as would exclude this and other corporations from voting, or giving or refusing their consent to the issuing of such bonds; followed by the action of the legislature, in passing the act in question.

Although courts, in some cases, have held corporations to be *persons, inhabitants* and *residents,* yet this has been by construction, and for special purposes; such as to create an equality of liability to taxation, and to confer power to bring or institute actions, the same as citizens. And, for general purposes, and for other special purposes, they are held not to be residents. *Per* POTTER, J.

And, independent of the cases making them " inhabitants," and " residents," by construction, for certain purposes, the natural, ordinary and literal construction of the words " residents of a town," would not include corporations; especially those whose places of business were elsewhere.

The word " resident," occurring in the constitution, or in a statute, ordinarily means an individual—a citizen—and does not mean a corporation.

THIS action was brought to restrain the defendants, who are commissioners under the statute, from issuing town bonds of the town of Rosendale, Ulster county, in aid of the construction of the Wallkill Valley Railroad. The defendants were appointed commissioners of said town of Rosendale, under chapter 311 of the laws of 1868.

A temporary injunction was granted on the complaint

alone, at the commencement of the action. The ground on which the plaintiffs claimed an injunction was, that the necessary number of consents had not been obtained to authorize the issue of bonds. The plaintiffs alleged that the Delaware and Hudson Canal Company, and one or two cement companies, were to be regarded as *residents* of the town of Rosendale, and that as such residents their consent was necessary to make up the proper amount of consents.

The complaint alleges that the Delaware and Hudson Canal Company owns real estate and a canal, in said town of Rosendale, and is taxed for the said real estate; and that these two facts make the corporation a legal resident of the town.

By section 3 of the act of April 22, 1868, (*Laws of* 1868, *vol.* 1, *p.* 644,) the commissioners appointed under said act are authorized "to subscribe, in the corporate name of such town, to the capital stock of the Wallkill Valley Railroad Company, and issue bonds for the payment of such stock to an amount not exceeding twenty per cent of the assessed valuation of the real and personal property of such town, appearing from the last assessment roll therein, * * * provided, however, that no subscription shall be made, or bonds issued as aforesaid, until the consent in writing, specifying the amount of such subscription, and bonds to be issued, be first obtained of a majority of the tax-payers, (or their legal representatives,) appearing on the last assessment roll of such village or town, representing a majority of the taxable property of the residents of said town, which consent shall be proved and acknowledged in the same manner as signatures to conveyances of real estate, and shall be filed and recorded in the clerk's office in the county in which the said town is situated." The section then provides that *when* these provisions are *all* complied with, the subscription to the stock can be made and the bonds issued.

The People *v.* Schoonmaker.

The complaint was not verified. The defendants' answer was verified. Upon this answer and various affidavits on the part of the defendants, a motion was made, before the same judge who granted the injunction, to vacate and set it aside, and the motion was granted. From this order the plaintiffs appealed to this court. All other material facts sufficiently appear in the opinion.

*M. B. Champlain,* (attorney general,) for the people.

*T. R. Westbrook,* for the other plaintiffs.

*Schoonmaker & Hardenburgh,* for the defendants.

*By the Court,* P. POTTER, J. The construction to be given to the act of the legislature of 1868, (*chap.* 311, § 3,) is really the only question in this case. None of the facts set up in the answer, or stated in the affidavits read on the motion, are controverted by the people, or the other plaintiffs in the action. Independent of the facts contained in the defendants' affidavits, and waiving the question whether the attorney general has authority to institute and maintain such an action, I am inclined to think that this motion can be determined by a reasonable interpretation of this special act of the legislature, enacted for a special purpose. A leading and controlling rule in the construction of statutes, as is conceded, is, to interpret them according to the true meaning and intent. To ascertain this intent, it is the duty of the court to find, by established rules, what was the fair, natural and probable intent of the legislature. For this purpose, the language employed in the act is first to be resorted to. If the words employed are free from ambiguity and doubt, and express plainly, clearly and distinctly, the intent, according to the most natural import of the language, there is no occasion to look elsewhere. (*McCluskey* v. *Cromwell,* 11 *N. Y.* 601.) But when

the meaning of words is doubtful; and where it is seen that the same words have different meanings when employed under different circumstances, or to effect different objects, resort may be had to extrinsc circumstances. (*Smith* v. *Helmer,* 7 *Barb.* 416,) and the courts may seek for that intent in every legitimate way. (*McCluskey* v. *Cromwell, supra.*) And in *The Mohawk Bridge Co.* v. *Utica and Schenectady Railroad Co.,* (6 *Paige,* 561,) Chancellor Walworth said, the court could advert to facts of public notoriety, to enable them to understand the language used by the legislature. These simple rules will, I think, enable us to draw a reasonable conclusion as to what was the meaning and intent of the legislature in using the language in the act to be interpreted. (*See also United States* v. *Breed,* 1 *Sumner,* 159; *Heyden's case,* 3 *Coke Rep.* 7, *b.; Devonshire* v. *Lodge,* 7 *Barn. & Cress.* 39.)

The act in question was "to amend an act incorporating the Wallkill Valley Railroad Company, by authorizing said company to extend its road to Kingston, Ulster county, and to authorize certain towns in Ulster county to issue bonds to aid in the construction of said road." The act that was amended was passed in 1866, and the only portions of either act, requiring interpretation, is the restriction as to the description of persons whose consent was to be obtained, in order to give authority to issue such bonds. In the original act, the provision was in the following words:

"Provided, however, that the power and authority conferred by this section, shall only be exercised upon the condition that the consent of the *tax-payers of such towns,* their heirs or legal representatives, appearing upon the last assessment roll for the year 1865, *as shall represent a majority of the taxable property of such towns,*" &c.

The supplemental act, passed April 24, 1868, (*Laws of* 1868, *ch.* 311,) under which the defendants were appointed commissioners, is in the following words:

"Provided, however, that no subscriptions to stock shall be made, or bonds issued as aforesaid, until *the consent* in writing, specifying the amount of such subscription and bonds to be issued, be first obtained *of a majority of the tax-payers* (or their legal representatives) *appearing on the last assessment roll of such village or town, representing a majority of the taxable property* of the residents of said town," &c. (§ 3.)

The last assessment roll of the town of Rosendale, referred to in said last statute, was that of 1867. The total valuation of the property of that town was $463,798. The consent of admitted resident tax-payers, to the issuing of said bonds, represented property on the tax roll to the amount of $121,448. Of admitted resident tax-payers who did not consent to the issuing of bonds represented property on said tax roll to the amount of $68,890. The Delaware and Hudson Canal Company, who are tax-payers in said county, represented property on said tax roll to the amount of $201,720.

It is therefore seen that this presents the simple question of construction, to wit: was the Delaware and Hudson Canal Company, in the contemplation of this statute, a *resident* of the town of Rosendale? If they were such residents, then the defendants, as commissioners, had no authority to issue the bonds referred to. If the Delaware and Hudson Canal Company were not, in the spirit and intent of this act, *residents* of said town, then the defendants seem to have been authorized to issue such bonds. This question of *residence*, then, is the real if not the only point in the case. Had the proceeding been under the act of 1866, the Delaware and Hudson Canal Company would be, clearly, included; and the valuation of their property would have been also included, because they were tax-payers, and their property was a part of the taxable property of said town. There can be no question as to this. They were not required by that act to be *residents*.

But that act was not satisfactory, and was changed. How, then, does the act of 1868 change the law, and what was the legislative intent in changing it? It is to be presumed that they had some object in view; and it is absurd to assume that they made this change of phraseology, in the act, without intending some change in its effect. Certain deductions are clear from the language itself. The former act included all tax-payers; the latter does not. That was one change. So that, by the latter act, *certain* tax-payers were refused a voice, or a vote, upon the question of consent. Who were intended to be so excluded, or, in other words, who, only, by the latter act, could vote or give consent to the issuing of such bonds? The answer is first to be taken from the words of the act itself, viz., *the residents of the town.* Was it the meaning and intent of the legislature, and is it the spirit of the act, that the Delaware and Hudson Canal Company, a corporation whose principal office and place of business is in the city of New York, should be included in the language of this act—*the residents of the town of Rosendale?* Looking at the two acts, alone, I should think this corporation was not intended to be included in the latter act; and looking at the extrinsic circumstances existing at the time; at the meeting of the resident tax-payers of the town, in the fall of 1869; at their resolution to apply to the legislature for such a change of the law as would exclude this and other corporations from voting, or giving or refusing their consent to the issuing of such bonds; followed by the action of the legislature thereon, in the enactment of the latter act; the construction which would seem to be natural, from the language of the act alone, is confirmed by these circumstances. The gross and apparent injustice of creating a liability against this corporation and their property, without their consent, is a matter chargeable to the legislature, and not to the courts. It is quite probable that the project is not only against their consent, but against, and

perhaps in depreciation of, their property that may be burthened to benefit others. And while we may see its injustice, it is our duty only to give construction to the law, not to make it.

It has been ably and elaborately argued that by analogy, and by reasonable construction, this corporation may be held to be residents of the town of Rosendale; and a very large number of cases are cited to show that the courts, in certain cases, have held corporations to be persons, inhabitants and residents. But this is by construction, and for specified purposes; such as to create an equality of liability to taxation, and to confer power to bring or institute actions, the same as citizens; but, for general purposes, and for other special purposes, they are held not to be residents. The taxing acts do not declare them to be residents, but in certain cases make them liable as residents. And while the word *resides* is of frequent occurrence, in the statute, when referring to individuals, it is not so used as applied to corporations. So, " taxable inhabitants" is the language applied to individuals, and not to corporations; and corporations are to be assessed by special provisions, and their names to be entered specially in the roll as directed by statute. And, independent of the cases cited, making them "inhabitants," and "residents," by construction, for certain purposes, the natural and ordinary, and literal construction of *residents of a town* would not include corporations; especially those whose places of business were elsewhere. (*See Webster's Dictionary.*) Besides, it may well be doubted whether an act limiting the description of persons who should be permitted to vote, or give consent to the issuing of bonds, and restricting those persons to residents of the town, would include corporations who cannot vote. The word "resident," occurring in the constitution, or in a statute, ordinarily means an individual—a citizen—and does not mean a corporation. In *Bank of the United States* v. *Deveaux,* (*5 Cranch,*

90,) it was held by Chief Justice Marshall, that a corporation—a mere incorporated legal entity—is an invisible, intangible thing, yet, being composed of persons, for the purpose of bringing actions, is to be considered a person, and also for the purpose of jurisdiction. (*Stevens* v. *The Phœnix Ins. Co.*, 41 *N. Y.* 154. *Merrick* v. *Van Santvoord*, 34 *id.* 218.) To the same effect is *Rundle* v. *Delaware and Rar. Canal Co.*, (14 *How. U. S. R.* 80;) *Conroe* v. *Nat. Protec. Ins. Co.*, (10 *How. Pr.* 404.) And see *Crawford* v. *Wilson*, (4 *Barb.* 522,) as to residence, per Paige, J. For the purpose of bringing actions, they are residents in the county where their office is located. (10 *How. Pr.* 403, 404. *The People* v. *Pierce*, 31 *Barb.* 138.) So, too, are various cases holding that a person cannot have residence in two places. (*Houghton* v. *Ault*, 16 *How. Pr.* 77, 84. *Chaine* v. *Wilson*, *Id.* 552. *Kranshaar* v. *New Haven Steamboat Co.*, 7 *Rob.* 356.)

Another argument has been urged by the plaintiffs; that the intent of the legislature, in passing the act in question, is to be gathered from other acts *in pari materia.* Indeed both sides claim the benefit to be derived from this rule; the plaintiff, by claiming it to be a part of the taxing system, and to be interpreted as if incorporated among the laws, and the defendant, as a part of the system of laws for bonding towns to aid the construction of railroads. I do not think it can be classed with either. There is a rule that several acts *in pari materia* are to be taken together, and compared, in the construction of them, when they have one object in view, or are intended as a part of a whole system. This cannot be said of the act in question, upon either side. It is no part of our general system of taxation. True, it refers to the assessment roll, in order to get a basis of equality, or of representation in voting, but this is all its connection; a part of the taxable inhabitants are not included in it. Nor, in relation to the construction to be given to this special act, is it *in pari materia*

with any other act. In a dozen acts enacted for such a purpose, to be found in the books, each will be found to be special and peculiar, and differing from almost every other. These acts are not one general system, but a special system for each corporation.

I am inclined to think the judge at special term, upon the papers before him, correctly vacated the injunction order, and that his order should be affirmed, with $10 costs of the appeal.

Order affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *P. Potter* and *Parker*, Justices.]