■ FRANSAC CORPORATION, Respondent, v AVNET, INC., Appellant.—Order, Supreme Court, New York County, entered January 20, 1975, striking defendant's jury trial demand, affirmed, without costs and without disbursements. Involved are two distinct leases covering different portions of plaintiff's building. In the 1968 lease the parties waived a jury trial on any matters arising out of or in any way connected with this lease as well as any claim of injury or damage. The 1973 lease contains essentially the same provision but it specifically excludes from its operation claims for property damage. When defendant quit the premises, plaintiff initiated this action for damages allegedly occasioned by defendant's failure to restore the premises, lost rental and for other related relief, and served a demand for a nonjury trial. Since defendant's subsequent demand for a jury trial was not served on plaintiff's attorneys, the motion to strike that demand was properly granted. A contrary holding requires going beyond the papers which were before Special Term and treating a disputed affidavit of service as indisputable record evidence. Justice does not dictate adapting such a course for defendant will receive a fair opportunity to present its defense and there is no public interest in the issue of whether the jury demand was in fact served on plaintiff's attorneys. It is unneccessary therefore to consider the impact of Lindenwood Realty Co. v Feldman (72 Misc 2d 68, revd 40 AD2d 855). Concur—Murphy, J. P., Nunez and Yesawich JJ.; Capozzoli, J., concurs in a memorandum and Lupiano, J., dissents in a memorandum, as follows:

Capozzoli, J., (concurring). I concur in the determination reached by the majority. In addition, if the question were properly before us, I would affirm the determination below, for the reasons given by Judge Gulotta, in his dissenting opinion in *Lindenwood Realty Co. v Feldman* (72 Misc 2d 68), which case was reversed on that dissent by the Appellate Division in 40 AD2d 855. Lupiano, J. (dissenting). Plaintiff Fransac Corporation (Fransac) alleges two causes of action against defendant Avnet, Inc.—the first, to recover $178,290 as the sum plaintiff must expend to restore certain premises (owned by it and leased to defendant) to the state and condition in which they were required to be kept pursuant to the leases and to recover the sum of $27,280.01 as rental due; the second, to recover the sum of $6,820 for use and occupancy for May, 1974. By lease dated September 3, 1968, between Fransac as landlord and Freeman Products, a division of Avnet as tenant, the entire store basement and the 2d and 12th floors at 242-250 Park Avenue South were rented for a term of two years commencing May 1, 1969. Paragraph 25 of this lease provides in pertinent part: "It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury *in any action,* proceeding or counterclaim brought by either of the parties hereto against the other *on any matter whatsoever arising out of or in any way connected with this lease,* the relationship of landlord and tenant, Tenant's use or occupancy of said premises, and/or any claim of injury or damage" (emphasis supplied). Subsequently, by lease dated January, 1973 between these same parties, the entire 11th floor at the premises was rented for a term of one year commencing May 1, 1973. This second lease also provides in paragraph 25 for a waiver of jury trial in similar language, but with the notable exception of any action, proceeding or counterclaim brought "for personal injury or property damage". By notice of motion dated January 6, 1975, returnable at Trial Term Part 62 on January 8, 1975, plaintiff Fransac moved "for an order striking the demand for a jury heretofore allegedly served and filed herein *upon the ground that the parties by contract waived trial by jury,* and for such other and further relief as to this Court may seem just and proper" (emphasis supplied). This motion was granted by Trial Term with the following observations: "The papers in opposition clearly demonstrate that a Notice of Jury Trial was filed and a fee for same paid, but it fails to show that said notice was in fact served upon plaintiff's attorneys. Finally, in view of the express language of Paragraph 25 of the lease, I find that the defendant has waived its right to a trial by jury". Scrutiny of the record discloses that the defendant's jury demand was filed with the County Clerk's office of New York County on October 17, 1974. This case thereafter appeared on the Jury Calendar. It is clear that on December 11, 1974, while the case was on said calendar and before Justice Sanders, plaintiff's counsel in discussion regarding the jury demand in reference to the issue of contractual waiver of trial by jury, took under advisement defendant's claim to trial by jury. At no time prior to and on this occasion is there any indication that plaintiff disputed the service of the demand. Indeed, as noted above, plaintiff's subsequent motion to strike the demand was essentially predicated on the provisions in the lease pertaining to jury waiver. Further, "The courts will take judicial notice of a custom or usage that is generally known or accepted to an extent sufficient to make it a matter of common knowledge" (13 NY Jur, Customs and Usages, § 29). It is well known that the County Clerk will not accept a jury demand that does not contain an affidavit of service. Reason and common sense are sure guides to be utilized in the proper disposition of litigated matters. Relevant to this appeal, is the

fact that this court properly granted plaintiff's motion to excise from the record the page containing the affidavit of service of defendant's jury demand on the ground that such documentary evidence was not submitted to Trial Term and was thus, dehors the record. "Nevertheless, an appellate court may, in its discretion, take judicial notice for the first time on appeal of a fact which was not brought to the attention of the trial court, and may do so even for the purpose of reversing the judgment. *Hunter v New York, Ontario & Western R. R. Co.,* 116 NY 615" (Richardson, Evidence [10th ed], § 14). Accordingly, in light of the aforesaid the issue of service of the jury demand must be resolved against plaintiff on the ground (1) that plaintiff failed to timely raise that issue and (2) did not properly bring that issue before the court, even if timely. In addition, assuming such issue was before the court in a proper manner, at most an issue of fact would be raised warranting a hearing to resolve same. The next critical issue on this appeal is whether the jury waiver provisions of the leases bar defendant's jury demand. First, it must be noted that the second lease referred to herein, dated January, 1973, specifically excepted from the jury waiver provision (par 25) claims for property damage. It is beyond cavil that plaintiff's cause of action to recover for moneys required to be expended to repair the leased premises is imbued with and is, in effect, a claim for property damage. In *Di Menna v Cooper & Evans Co.* (220 NY 391, 395) it was recognized that a plaintiff who "has combined with a prayer for equitable an alternative claim for a money judgment, cannot deprive the defendant of the jury trial assured to him by the Constitution." Of course, where a severance is practicable, the claims upon which a defendant is entitled to a jury trial can be separated from the equitable (nonjury) cause of action which would then be triable by the court (see *Vinlis Constr. Co. v Roreck,* 23 AD2d 895). The complaint, as drawn herein, does not provide an apparent practical basis for severance as to the claims for property damage. However, the plaintiff's claims for rental due and for use and occupancy are pragmatically capable of severance and these claims would fall within the ambit of the jury waiver provisions of the leases. Analogous to the joinder of legal claims entitling a litigant to a jury trial with equitable claims not entitling a litigant to a jury trial is the joinder of legal claims in which a jury trial may be had with legal claims in which a jury trial may not be had because of contractual waiver of jury trial. Further, it may well be that amplification of plaintiff's claim for property damage by ascribing (itemizing) said damage to the specific premises leased under the respective leases can serve as a proper basis for severance of those claims. Plaintiff could therefore argue with some persuasiveness that although defendant can demand a jury trial with respect to plaintiff's claim for property damage to the 11th floor, no jury trial may be had with respect to the claim for property damage to the entire store basement and the 2d and 12th floors. Perforce we must resolve the key issue delineated above, to wit, whether the jury waiver provisions of the leases are valid. Section 259-c of the Real Property Law provides: "Any provision in a lease, executed after the effective date of this act [July 2, 1965], that a trial by jury is waived in any action, proceeding or counterclaim brought by either of the parties thereto against the other in any action for personal injury or property damage, is null and void." On March 2, 1972, in *Swinger Realty Corp. v Kizner Imports* (70 Misc 2d 742, 743), the Appellate Term, First Department, in considering the effect of a jury waiver provision on a landlord's property damage claim, aptly observed (p 743): "Section 259-c of the Real Property Law provides that a provision in a lease that a trial by jury is waived in any action 'brought by either of the parties

thereto against the other in any action for personal injury or property damage' is null and void.' The right to a jury trial is fundamental in American jurisprudence. Provisions of law protective of that right may not be delimited by construction. Section 259-c of the Real Property Law applies * * * and defendant's jury demand should not have been stricken out." In my concurring opinion in that case, I noted (p 743) that "Personal injury is defined in section 37-a of the General Construction Law as including 'libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another'. Clearly, section 259-c of the Real Property Law enunciates a policy whereby actions for personal injury are removed from the ambit of jury waiver provisions contained in a lease agreement. Such policy should be viewed in light of the distinction between claims that are tortious and those arising out of contract. A claim for property damage arising *solely* out of the contractual provisions of the very lease which contains the jury waiver provisions, and not out of some other contractual relationship or incidental to a claim for personal injury should not in reason warrant invocation of a policy voiding the jury waiver provision". Nevertheless, I concluded (pp 743–744) that "in light of the *literal* language of section 259-c of the Real Property Law, judicial construction taking cognizance of and effectively applying the rationale embodied in the above observation, could well constitute interference with the legislative prerogative" (emphasis supplied). On January 6, 1971, prior to *Swinger,* Mr. Justice Gulotta in a dissenting opinion in *Lindenwood Realty Co. v Feldman* (72 Misc 2d 68, 69–70) involving the same issue that confronted the *Swinger* court, declared: "In my opinion section 259-c of the Real Property Law which invalidates such a waiver in an action to recover for 'personal injury or property damage' has no application to our instant case. *The section appears to have no legislative history* but traditionally these words refer to tort actions arising out of a liability imposed by law for negligence, or even a willful tort, but *not out of a contract.* Section 37-a of the General Construction Law so defines 'personal injury' although it contains no definition of 'property damage' * * * I regard the section as a companion section to section 5-321 of the General Obligations Law * * * which invalidates a provision in a lease which purports to exempt a landlord from liability for damages for injuries to *person or property* due to *his own negligence"* (emphasis supplied). In November, 1972, the Appellate Division, Second Department, reversed the Appellate Term order on the dissenting opinion of Mr. Justice Gulotta *(Lindenwood Realty Co. v Feldman,* 40 AD2d 855). While my analysis in *Swinger* mirrors Mr. Justice Gulotta's observations in *Lindenwood,* I am impelled to dissent from the latter's conclusion for the reason delineated in my concurring opinion in *Swinger.* "It is presumed, because it must be presumed that the language of a statute expresses the intention of the Legislature correctly; from this follows the rule that the intent of the makers of a law is to be sought, first of all, in the words of the act itself. This presumption is rebuttable. Where the language employed by the legislature to express its will is plain and unambiguous and expresses a meaning that is single and sensible, the presumption becomes conclusive and that meaning is the legislative intention *(People v Long Island RR.,* 194 NY 130). In such a case, the statute must be given a literal interpretation, that is, it must be interpreted to mean exactly what it says. A statute has a single meaning when its terms are plain and free from ambiguity, and do not admit of another meaning by the context *(People v Schoonmaker,* 63 Barb. 44) * * * The result of a proposed construction is a consideration that may effect an

obvious meaning. Ambiguity or want of same may arise where the effect of a literal interpretation is contrary to the principles of justice, good conscience and morals *(Briggs v Easterly,* 62 Barb. 51). As it was said by the court in *Matter of Meyer* (209 NY 386), 'Uncertainty of sense, however, does not spring alone from uncertainty of expression. The legislative intention, if expressed, is the law itself. It is always presumed, in regard to a statute, that *no unjust or unreasonable result* was intended by the legislature. Hence, if viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for judicial construction'" (McCaffrey, Statutory Construction, § 3, pp 4–5). Here, it is patent that literal interpretation of the statute does not produce an unjust or unreasonable result. "There is no question but that literalness offers a greater degree of probability of accuracy of result in statutory construction than any other theory of interpretation. In some instances it may produce an inaccurate result in its application, but this would appear unavoidable. True interpretation requires that the words of a statute be taken in the sense which the writers attached to them. A single, sensible meaning of a statute may not be expressive of the real legislative intent, because in giving to the words of the text their natural and ordinary meaning the interpreter may not be taking them in the sense which the legislature attached to them *(Boston Sand & Gravel Co. v United States,* 278 US 41). While such a case is unusual, its happening relates causally to inaccurate use of language. Basically, this is a problem for the statutory draftsman, in that statutes should be written with a view to the process by which they should be interpreted. *The interpreter must assume that words are used in their natural and ordinary meaning.* Conceding its imperfections, literalness, in its full sense, is the most reliable guide to the legislative intent" *(McCaffrey, supra,* p 7). (Emphasis supplied.) It should also be noted that in *Matter of Sentry Ins. Co. (Arnsel)* (36 NY2d 291), the Court of Appeals stated (p 294): "The Legislature, of course, frequently employs the same words in different statutes with different meaning and effect. (See, generally, McKinney's Cons Laws of NY, Book 1, Statutes, § 236)". Of critical significance is the absence of any legislative history regarding section 259-c of the Real Property Law. In performing the function of statutory construction, "a court must construe the language of a statute as it finds it, or as it is written, and not as the court believes it should have been written. The office of interpretation is to bring a sense out of the words, not to bring a sense into them. Under the doctrine of separation of powers, it is fundamental that the court may not legislate, nor may they change legislation" (56 NY Jur, Statutes, § 106). Section 259-c utilizes the term "in *any action* for personal injury *or* property damage" (emphasis supplied) without any modifying or limiting language. No distinction is made between contract actions and tort actions. On what basis, therefore, may the court add such a qualifying distinction under the guise of statutory construction. There is, I repeat, no legislative history indicating that the statute was so intended to be limited. There is no repugnancy and inconsistency presented which must be obviated. "The courts may not speculate as to the probable intent of the legislature apart from the words" (56 NY Jur, Statutes, § 113). It cannot be said under these circumstances that literal interpretation of the statute is not controlling or would lead to an absurd result or be violative of the legislative intent. Therefore, it must be concluded that under section 259-c of the Real Property Law the defendant is entitled to a jury trial respecting plaintiff's claims for property damage despite the jury waiver provisions of the leases. The order of the Supreme

Court, New York County, entered January 20, 1975, granting plaintiff's motion to strike out the defendant's jury demand, should be modified, on the law and the facts and in the exercise of discretion, by severing plaintiff's causes of action for rental due and for use and occupancy with a direction that same be placed on the Nonjury Calendar and by denying plaintiff's motion to strike defendant's jury demand with respect to plaintiff's cause of action for property damage, and as modified, affirmed.